UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| **JUDICIAL WATCH, INC.,** on behalf of itself and certain of its members,<br>    425 Third Street, Ste. 800<br>    Washington, D.C. 20024 | :<br>:<br>:<br>: | |
| *Plaintiff,* | : | Civil No. _____ |
| v. | :<br>: | <u>**PLAINTIFF'S COMPLAINT**</u> |
| **ALISON LUNDERGAN GRIMES,**<br>in her official capacity as Secretary of State and Chief Election Official of the Commonwealth of Kentucky,<br>    700 Capital Ave., Ste. 152,<br>    Frankfort, Kentucky 40601<br>    Franklin County | :<br>:<br>:<br>:<br>: | |
| **MARY SUE HELM,**<br>in her official capacity as Interim Executive Director of the Kentucky State Board of Elections,<br>    140 Walnut Street<br>    Frankfort, Kentucky 40601<br>    Franklin County | :<br>:<br>:<br>:<br>: | |
| **ALBERT B. CHANDLER, III,**<br>in his official capacity as Member of the Kentucky State Board of Elections,<br>    140 Walnut Street<br>    Frankfort, Kentucky 40601<br>    Franklin County | :<br>:<br>:<br>:<br>: | |
| **DONALD W. BLEVINS,**<br>in his official capacity as Member of the Kentucky State Board of Elections,<br>    140 Walnut Street<br>    Frankfort, Kentucky 40601<br>    Franklin County | :<br>:<br>:<br>:<br>: | |

(*Cont.*)

| | |
|---|---|
| **JOSHUA G. BRANSCUM,** | : |
| in his official capacity as Member of the | |
| Kentucky State Board of Elections, | : |
|     140 Walnut Street | |
|     Frankfort, Kentucky 40601 | : |
|     Franklin County | |
| | : |
| **STEPHEN HUFFMAN,** | |
| in his official capacity as Member of the | : |
| Kentucky State Board of Elections, | |
|     140 Walnut Street | : |
|     Frankfort, Kentucky 40601 | |
|     Franklin County | : |
| | |
| **GEORGE RUSSELL,** | : |
| in his official capacity as Member of the | |
| Kentucky State Board of Elections, | : |
|     140 Walnut Street | |
|     Frankfort, Kentucky 40601 | : |
|     Franklin County | |
| | : |
|               *and* | |
| | : |
| **MICHAEL G. ADAMS,** | |
| in his official capacity as Member | : |
| of the Kentucky State Board of Elections, | |
|     140 Walnut Street | : |
|     Frankfort, Kentucky 40601 | |
|     Franklin County | : |
| | |
|             *Defendants*. | : |

Plaintiff Judicial Watch, Inc., by its attorneys, brings this action for declaratory and injunctive relief and alleges as follows:

## **INTRODUCTION**

1.     Plaintiff Judicial Watch, Inc. seeks declaratory and injunctive relief to compel the Commonwealth of Kentucky to comply with its voter list maintenance obligations and its record production obligations, under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, and under 52 U.S.C. § 20510(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

4.      Venue is proper in this Division because all Defendants perform their duties in, and thus reside in the City of Frankfort, Franklin County, Kentucky.  LR 3.2(a)(1), (e).

## PARTIES

5.      Plaintiff JUDICIAL WATCH, INC. ("Judicial Watch") is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, D.C. 20024.  Its mission is to promote transparency, integrity, and accountability in government and fidelity to the rule of law.  As part of this mission, Judicial Watch regularly requests records from state and local governments pursuant to federal and state laws, analyzes the responses and disseminates both its findings and the requested records to the American public to inform it about "what the government is up to."  Judicial Watch will sue to enforce compliance with federal and state laws concerning the provision of records, public integrity, government accountability, and voting rights.  It has undertaken investigations and commenced other lawsuits to enforce the NVRA.

6.      Defendant ALISON LUNDERGAN GRIMES is the Secretary of State of the Commonwealth of Kentucky (the "Secretary") and has served in this capacity since January 2, 2012.  The Commonwealth of Kentucky has designated the Secretary as Chair of the State Board

of Elections and as the "chief election official" for the Commonwealth. KY. REV. STAT. ANN. § 117.015(2); *see* 52 U.S.C. §20509.

7. Defendant MARY SUE HELM is the Interim Executive Director, and Defendants ALBERT B. CHANDLER, III, DONALD W. BLEVINS, JOSHUA G. BRANSCUM, STEPHEN HUFFMAN, GEORGE RUSSELL, and MICHAEL G. ADAMS are members of the Kentucky State Board of Elections ("Board of Elections"). Kentucky law provides that the Board of Elections "maintain a complete roster of all qualified registered voters within the state by county and precinct voters" and compile "all information furnished to the board relating to the inclusion or deletion of names from the rosters for four (4) years." KY. REV. STAT. ANN. § 117.025(3)(a), (d).

8. All Defendants are sued in their official capacities only.

## FACTUAL BACKGROUND

9. The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4).

### *Kentucky's Excessive Registration Rates*

10. In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to release a report regarding state voter registration practices. 52 U.S.C. § 20508(a)(3).

11. In June 2017, the EAC published the most recent report ("2017 EAC Report") that contained, *inter alia*, voter registration statistics based on information provided by the states.

12. Whenever a jurisdiction has more voter registrations than individuals old enough to register – in other words, a registration rate exceeding 100% of adult residents – it is a strong

4

indication, recognized by federal courts, that the jurisdiction is not taking the steps required by law to remove the registrations of ineligible registrants.

13. Judicial Watch analyzed the data in the 2017 EAC Report and compared it to the most recent census data to determine the registration rates of United States counties.

14. Kentucky leads every other state in the nation in the number of counties in which total registration is greater than the voting-age population. Specifically, 41 Kentucky counties have more registered voters than voting-age residents.

15. Judicial Watch also compared voter registrations to *citizen* voting-age population. Citizen voting-age population excludes noncitizens, who are not lawfully entitled to register or vote in federal or state elections, and so is a more meaningful way to assess a jurisdiction's registration rate than voting-age population alone.

16. Kentucky leads every other state in the nation in the number of counties in which total registration exceeds the citizen voting-age population. Specifically, the number of voter registrations exceeds the number of age-eligible citizens in 48 Kentucky counties, or 40% of all Kentucky counties.

17. This represents a large increase in what was already one of the highest state totals of counties with citizen-adjusted registration rates exceeding 100%. Prior to release of the 2017 EAC Report, the data showed that 30 Kentucky counties had more registered voters than citizens over the age of 18.

18. The Commonwealth of Kentucky as a whole has more statewide registrations than it has resident citizens of voting age. Kentucky is one of only three states in the nation with an active, statewide registration rate exceeding 100%.

19. Kentucky's high registration rates indicate that it is not conducting a general program that makes a reasonable effort to cancel the registrations of ineligible registrants.

*Kentucky's Failure to Report Inactive Registrations*

20. Federal regulations require the states to provide various kinds of registration data to the EAC for use in its biennial report. This data is supposed to include the "total number of registered voters statewide, including both 'active' and 'inactive' voters if such a distinction is made by the state," for the last two general federal elections. 11 C.F.R. § 9428.7(b)(1), (2).

21. Kentucky law has established an inactive list for those voters who fail to respond to a confirmation notice. KY. REV. STAT. ANN. § 116.112(5).

22. Kentucky failed to report to the EAC the number of its inactive registrations in violation of federal regulations.

23. If Kentucky were conducting reasonable list maintenance, registrations routinely would be moved to the inactive list for two general federal elections whenever registrants failed to respond to a confirmation notice.

24. Kentucky's failure to report this data suggests that it is not performing reasonable voter list maintenance.

25. Inactive registrants may vote on Election Day, so inactive registrations must be considered part of a state's voter registration list. 52 U.S.C. § 20507(d)(2)(A).

26. By failing to include inactive registrations, Kentucky's registration rates are made to appear lower and more reasonable than they actually are. Stated differently, if Kentucky had reported inactive voter registrations to the EAC as required by federal law, the number of Kentucky counties with registration rates exceeding 100% would be even greater.

27. On information and belief, Kentucky is not querying voters who may have moved, placing the registrations of voters who do not respond to those queries on its inactive list, and then cancelling such registrations after two general federal elections, in numbers that are consistent with its obligation to conduct a general program that makes a reasonable effort to cancel the registrations of ineligible registrants.

### *Kentucky's Failure to Report Sending Any Confirmation Notices*

28. The NVRA provides that no registration may be cancelled on the ground that a voter has moved elsewhere unless the registrant either confirms this fact in writing or fails to respond to an address-confirmation notice described by the statute (the "confirmation notice"). 52 U.S.C. § 20507(d)(1). The confirmation notice must incorporate a "postage prepaid and pre-addressed return card, sent by forwardable mail," asking the registrant to confirm his or her residence address. *Id*. at (d)(2). If no response is received to this notice, a registration may be cancelled, but only following a statutory waiting period lasting at least two general federal elections. *Id.* at (d)(1)(B)(ii).

29. Sending confirmation notices is the primary method prescribed by federal law for determining whether someone who may have moved still resides in an electoral jurisdiction.

30. Federal regulations require states to provide to the EAC for use in its biennial report the "statewide number of confirmation notices mailed out between the past two federal general elections and . . . responses received to these notices during the same period." 11 C.F.R. § 9428.7(b)(8).

31. Kentucky failed to report to the EAC the number of confirmation notices it sent during the previous two-year period in violation of federal regulations.

32. On information and belief, Kentucky is not sending confirmation notices to those who are believed to have moved at a rate that is consistent with its obligation to conduct a general program that makes a reasonable effort to cancel the registration of ineligible registrants.

### *Judicial Watch's Notice Letter and Defendants' Responses*

33. On April 11, 2017, Judicial Watch sent an NVRA Section 8 notice of violation letter (the "Notice Letter," **Exhibit A**), both by email and by certified mail to the address for the Secretary. According to the U.S.P.S. tracking system, the Notice Letter was delivered on April 19, 2017 to 700 Capital Ave., Suite 152, Frankfort, Kentucky, 40601, the mailing address for the Secretary.

34. The Notice Letter observed that there were more registered voters than citizens of voting age in (at that time) 30 Kentucky counties. The Notice Letter concluded that the Commonwealth and these counties were not conducting a reasonable list maintenance program that complied with the NVRA.

35. The Notice Letter stated that "This letter serves as statutory notice that Judicial Watch will bring a lawsuit against [the Secretary] if [the Secretary] do[es] not take specific actions to correct these violations of Section 8 within 90 days."

36. The Notice Letter asked for a written response within 45 days "informing [Judicial Watch] of the compliance steps [the Secretary is] taking," and described in detail the kinds of compliance-related information being sought.

37. Citing Section 8(i) of the NVRA, the Notice Letter also requested "all pertinent records concerning 'the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Kentucky's official eligible voter lists during the past 2 years. Please include these records with [the Secretary's] response to this letter."

8

38. The Notice Letter constitutes statutory notice, pursuant to 52 U.S.C. § 20510(b)(1), of violations of Sections 8(a)(4) and 8(i) of the NVRA.

39. Judicial Watch received a response dated April 25, 2017 via U.S. Mail (the "Response Letter," **Exhibit B**) from Maryellen Allen, then Executive Director of the Board of Elections.

40. The Response Letter made no mention of Judicial Watch's demand in the Notice Letter that Defendants identify "the compliance steps [the Secretary is] taking" to remedy its failings or to meet its obligations under Section 8(a)(4) of the NVRA, and did not address Judicial Watch's allegations that 30 Kentucky counties had more registered voters than citizen voting-age population.  Instead, the Response Letter only discussed Judicial Watch's requests for documents.

41. In response to Judicial Watch's request for copies of the most recent voter registration database, the Response Letter stated that "the [Board of Elections] objects to this request pursuant to [KY. REV. STAT. ANN. §] 117.025(3)(h)" as Judicial Watch is not a "duly qualified candidate[], political party committee[] or official[] thereof, or any committee that advocates or opposes an amendment or public question,"  adding that "the [Board of Elections] denied [Judicial Watch's] request."

42. In response to the other requests for documents in the Notice Letter, the Board of Elections indicated "they will use its best efforts to make available to [Judicial Watch] any responsive, non-exempt public records in its care, custody or control on or before June 26, 2017."

43. By letter dated June 26, 2017 (the "Second Response Letter," **Exhibit C**), Director Allen wrote to update the status of the "non-exempt" record search.  The Second

Response Letter stated that the Board of Elections "is still in the process of preparing this information" and "will use its best efforts to make available to [Judicial Watch] any responsive, nonexempt public record on or before August 7, 2017."

44. The Second Response Letter again made no mention of Judicial Watch's request in the Notice Letter that Defendants identify "the compliance steps [the Secretary is] taking" to remedy its failings or to meet its obligations under Section 8(a)(4) of the NVRA. Once again, the Second Response Letter only discussed Judicial Watch's requests for documents.

45. As of the date of this complaint, there have been no further communications from Defendants to Judicial Watch concerning either (1) compliance with the list maintenance provisions of the NVRA, or (2) the production of records by the Secretary or the Board of Elections.

### *Judicial Watch's Interest in Compliance With the NVRA*

46. As part of its mission to promote transparency, integrity, and accountability in government and fidelity to the rule of law, Judicial Watch regularly requests records from state and local governments pursuant to Section 8(i) of the NVRA. Judicial Watch analyzes all responses, as well as federal, state, and local data from any available source, to determine whether jurisdictions are properly maintaining accurate voter rolls as required by Section 8(a)(4) of the NVRA. If it believes that a jurisdiction is not complying with Section 8 of the NVRA, Judicial Watch will sue under 52 U.S.C. § 20510(b) to enforce that statute. In pursuit of this particular mission, Judicial Watch recently wrote to eleven other states besides Kentucky to inform them of perceived violations of the NVRA and to request NVRA-related documents. Judicial Watch has a current NVRA lawsuit against Maryland and Montgomery County, Maryland, and in the recent past has sued and resolved NVRA cases against Ohio and Indiana.

Judicial Watch also has submitted several friend-of-the-court briefs at all levels of the federal court system in cases concerning enforcement of the NVRA.

47. Kentucky's failure to comply with Section 8 of the NVRA has caused and will cause Judicial Watch to expend significant, additional resources to achieve its basic organizational mission.

48. A person becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization. The financial contributions of members are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.

49. Judicial Watch has approximately 12,102 members in the Commonwealth of Kentucky. As a membership organization, Judicial Watch represents the interests of these members, many of whom are lawfully registered to vote and have the right to vote in Kentucky, including the right to vote in elections for federal office.

50. Judicial Watch solicits the views of its members in carrying out activities in support of its mission, including the views of its members in Kentucky. The views of Judicial Watch's members significantly influence how Judicial Watch chooses activities to engage in to further its mission.

51. About 1,187 of Judicial Watch's Kentucky members have an email address and have contributed $10 or more to Judicial Watch within the past two years. One hundred and thirty (130) of these members who are lawfully registered to vote in Kentucky have directly informed Judicial Watch that they are concerned about Kentucky's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA, and wish Judicial Watch to take legal

11

action on their behalf to protect their right to vote.  The views of Judicial Watch's members were a substantial factor weighing in favor of the initiation of this lawsuit.

52. Protecting the rights of Judicial Watch members who are lawfully registered to vote in Kentucky is part of Judicial Watch's mission of promoting integrity, transparency, and accountability in government and fidelity to the rule of law, as is ensuring compliance with the voter list maintenance obligations of Section 8 of the NVRA and protecting the integrity of the election process in general.  It also is well within the scope of the reasons why members of Judicial Watch join the organization and continue to support its mission.

53. Members of Judicial Watch who are lawfully registered to vote in Kentucky not only have the constitutional right to vote in state elections, including elections for federal office, but they also have a statutory right to the safeguards and protections set forth in the NVRA.

54. Kentucky's failure to comply with the NVRA inflicts a burden on the constitutional right to vote of those members of Judicial Watch who are lawfully registered to vote in the Commonwealth, by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be outweighed by fraudulent or ineligible ones.

55. Kentucky's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA infringes the statutory rights of those members of Judicial Watch who are lawfully registered to vote in Kentucky.  Those individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8 of the NVRA.

56. Absent action by Judicial Watch, it is unlikely that any individual member of Judicial Watch who is lawfully registered to vote in Kentucky would have the ability

or the resources to take legal action to protect his or her rights or redress his or her injuries with respect to Kentucky's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA.

57. Judicial Watch and its Kentucky members are persons aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

## COUNT I

### (Violation of Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4))

58. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

59. Defendants have failed to fulfill Kentucky's obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in Kentucky elections.

60. Plaintiff Judicial Watch and its members have suffered, and will continue to suffer, irreparable injury as a direct result of Defendants' failure to fulfill Kentucky's obligations to comply with Section 8(a)(4) of the NVRA.

61. Plaintiff Judicial Watch and its members have no adequate remedy at law.

## COUNT II

### (Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i))

62. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

63. Defendants have failed to fulfill Kentucky's obligations under Section 8(i) of the NVRA to make available to Judicial Watch "all records" within the past two years "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."

64. To the extent that Judicial Watch's right to obtain access to voting records described by Section 8(i) of the NVRA is limited or foreclosed by KY. REV. STAT. ANN. § 117.025, or by any other Kentucky statute, those Kentucky statutes are superseded and preempted by the provisions of Section 8(i) of the NVRA, and are invalid and unenforceable against Judicial Watch.

65. Plaintiff Judicial Watch and its members have suffered, and will continue to suffer, irreparable injury as a direct result of Defendants' failure to fulfill Kentucky's obligations to comply with Section 8(i) of the NVRA.

66. Plaintiff Judicial Watch and its members have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of a judgment:

a. Declaring Defendants to be in violation of Section 8(a)(4) of the NVRA;

b. Permanently enjoining Defendants from violating Section 8(a)(4) of the NVRA;

c. Ordering Defendants to develop and implement a general program that makes a reasonable effort to remove from Kentucky's rolls the registrations of ineligible registrants;

d. Declaring that Section 8(i) of the NVRA supersedes and preempts any contrary Kentucky law;

e. Declaring that Defendants are in violation of Section 8(i) of the NVRA by refusing to allow Judicial Watch to inspect and copy the requested records;

f. Permanently enjoining Defendants from refusing to allow Judicial Watch to inspect and copy the records Judicial Watch requested;

g. Ordering Defendant to pay Judicial Watch's reasonable attorney's fees, including litigation expenses and costs; and

      h.      Awarding Judicial Watch such other and further relief as this Court deems just and proper.

Dated:    November 14, 2017               Respectfully submitted,

*/s/ Mark A. Wohlander*
Mark A. Wohlander
Wohlander Law Office, PSC
P.O. Box 910483
Lexington, Kentucky 40591
mark@wohlanderlaw.com
Office: (859) 309-1691
Facsimile: (859) 309-1698
Cellular: (859) 361-5604
*Co-Counsel for Plaintiff*

Robert D. Popper
JUDICIAL WATCH, INC.
425 Third Street S.W., Ste. 800
Washington, DC 20024
rpopper@judicialwatch.org
Office: (202) 646-5172
Facsimile: (202) 646-5199
*Co-Counsel for Plaintiff*
**[Moving Pro Hac Vice]**

H. Christopher Coates
Law Offices of H. Christopher Coates
934 Compass Point
Charleston, South Carolina 29412
curriecoates@gmail.com
Cellular: (843) 609-7080
*Co-Counsel for Plaintiff*
**[Moving Pro Hac Vice]**

Thomas E. Clay
Clay Daniel Walton & Adams, PLC
462 South Fourth Street, Suite 101
Louisville, Kentucky 40202
tclay@tclaylaw.com
Office: (502) 561-2005
Facsimile: (502) 415-7505
*Co-Counsel for Plaintiff*

15