**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION – FRANKFORT**

| | |
|---|---|
| **JUDICIAL WATCH, INC.,**<br>Plaintiff,<br><br>**UNITED STATES OF AMERICA**,<br>Plaintiff-Intervenor,<br><br>v.<br><br>**ALISON LUNDERGAN GRIMES**, et al.,<br>Defendants. | Civil Action No. 3:17-CV-00094-GFVT |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
KENTUCKY DEMOCRATIC PARTY'S MOTION FOR INTERVENTION**

The United States hereby submits its opposition to the October 13, 2019, Motion to Intervene filed by the Kentucky Democratic Party ("KDP") (ECF No. 46). The United States opposes the intervention of the KDP both as of right and permissively. The KDP's motion is untimely, fails to establish a substantial legal interest in this federal court action, and seeks to advance interests already adequately represented by the parties. The motion also fails to comply with the Federal Rules of Civil Procedure governing intervention. Moreover, permitting this untimely intervention permissively would likely thwart the continued cooperative enforcement of this Court's Consent Judgment by forcing the parties to litigate tangential state law questions that the KDP has already raised and obtained relief on in a state court proceeding. Instead, the Court can permit the KDP to participate as *amicus*, to the extent it has views on the pending motion to extend the terms of the Consent Judgment.

## I.    FACTUAL BACKGROUND

In 1993, Congress adopted the National Voter Registration Act ("NVRA") to, among other things, ensure the maintenance of accurate and current voter registration rolls.  52 U.S.C. § 20501(b).  Section 8 of the NVRA, 52 U.S.C. § 20507, sets forth requirements regarding the maintenance of statewide voter registration lists.  It creates an affirmative obligation to maintain accurate voter rolls, prescribes the conditions under which registrants may be removed, and specifies procedures states must follow and protections they must employ before removing a voter from the voter registration list.  Congress charged the Attorney General with enforcing the NVRA on behalf of the United States.  52 U.S.C. 20510(a).  Congress also allowed private parties to enforce the NVRA under certain conditions, such as sending a pre-suit notice of violations and waiting for a prescribed period before bringing suit. 52 U.S.C. 20510(b).

On June 28, 2017, the United States sent a letter to every NVRA-covered state, requesting information relating to compliance with the NVRA's voter registration list maintenance provisions. [1]  Ex. 1 ¶ 5 (Declaration of John A. Russ, IV.); Ex. 2.  The letter also requested certain information related to state responses to the biannual election administration and voting survey conducted by the U.S. Election Assistance Commission ("EAC") for the 2013-2014 election cycle.  In response to the United States' letter, Kentucky admitted that it "did not include data regarding confirmation notices and removal for failure to vote [in its biannual survey response] because there is no data to report. . . . The Kentucky Legislature has not funded the initiative, nor made it mandatory, so the State Board of Elections has not done a cancellation

---

[1]  The NVRA covers 44 states and the District of Columbia, including Kentucky.  Exceptions from coverage apply to certain states that permit, in federal elections, election-day voter registration or do not require voter registration.  *See* 52 U.S.C. § 20503(b).  Kentucky is not such a state.  *See* KY. REV. STAT. ANN. § 116.045(2) (2019).

mailing during the time frame requested." *See* Ex. 1 ¶ 7 (Russ Decl.); Ex. 5 (letter dated Jan. 24, 2018).

On November 14, 2017, Private Plaintiff Judicial Watch filed this action against the Kentucky Secretary of State and the State Board of Elections to enforce the NVRA. ECF No. 1. Subsequently, on April 2, 2018, the United States notified Kentucky of its own intent to sue to enforce the NVRA, and after extensive discussions with counsel for Defendants and Judicial Watch, and with the parties' consent, the United States moved to intervene on June 12, 2018. ECF No. 32. That same day, the parties filed a motion for entry of an agreed order, which this Court subsequently granted as a Consent Judgment on July 3, 2018. ECF Nos. 33, 39. The Consent Judgment aimed to resolve the claims of the United States and Judicial Watch regarding Kentucky's non-compliance with the NVRA. It sets forth a carefully negotiated plan for bringing the Commonwealth into compliance with the list maintenance requirements of the NVRA by restarting a general program to identify and ultimately remove registrants from the voting rolls who have become ineligible to vote due to an unreported move outside their jurisdiction of registration while also carefully observing the requirements to protect eligible registrants from wrongful removal from the rolls. As part of the Consent Judgment, the parties stipulated that there were currently no registrants on an inactive list or in the removal process set out in Section 8(d) of the NVRA, that no notices required by Section 8(d) of the NVRA had been mailed since 2009, and that no registrants had been removed from the voter registration list pursuant to the procedures in Section 8(d) of the NVRA since 2015.[2] ECF No. 39, ¶ 28. The

---

[2]  Section 8 of the NVRA provides procedures for maintaining accurate voter registration lists. Section 8(a)(4)(B) requires states to conduct a general program that makes a reasonable effort to remove the names of ineligible registrants from the official lists of eligible registrants by reason of a change in residence of the registrant, in accordance with subsections (b), (c), and (d). 52 U.S.C. § 20507(a)(4)(B). Section 8(d) requires that registrants may not be removed for change

parties agreed to work together in a "fair, reasonable, and collaborative" fashion and "work cooperatively as the Kentucky State Board of Elections seeks to ensure compliance with the terms of [the] Agreed Order and the NVRA." ECF No. 39 at ¶¶ 30, 39. News of the Consent Judgment was widely reported in the press, as were subsequent mailings by Kentucky under the settlement. Ex. 1 ¶ 10 (Russ Decl.); *see, e.g.*, Ex. 6.

### A. The United States' Efforts to Work Collaboratively with the Parties to Achieve Compliance

Prior to and immediately following entry of the Consent Judgment, the United States communicated directly with the Kentucky State Board of Elections ("SBE") General Counsel, as well as other counsel representing the Defendants. Defendants' counsel described SBE's list maintenance activities and the steps being taken to comply with the Consent Judgment. *See* Ex. 1 ¶¶ 12-14 (Russ Decl.). The United States had significant discussions with the SBE leading up to its initial canvass mailing required by paragraph 43(c) of the Consent Judgment, designed to identify registrants who have moved. The SBE advised when the mailing went out and that many such mailings were later returned undeliverable. Ex. 1 ¶ 14 (Russ Decl.).

In July 2018, however, the SBE General Counsel informed the United States that she had been "asked to have all communication go through our legal counsel," referring to SBE's outside counsel. *See* Ex. 1 ¶ 15 (Russ Decl.); Ex. 8. During the period that followed, neither the United States nor Judicial Watch were permitted to speak with SBE staff. Also, during this period, the United States learned that the Executive Director for Defendant SBE had publicly accused

---

of address unless they confirm in writing that they have moved outside the registrar's jurisdiction, or they fail to respond to a statutorily-prescribed notice (a "Section 8(d)(2) notice") and then also fail to vote or appear to vote between the date of the notice and the day after the second subsequent general election for Federal office. 52 U.S.C. § 20507(d)(1). In contrast, Section 8(c) requires an update of the registrant's address if returned postal information indicates an address change within the registrar's jurisdiction. 52 U.S.C. § 20507(c)(1)(B)(i).

Defendant Kentucky Secretary of State of ordering him to "slow-walk" or "to not comply" with the Consent Judgment in this case. Ex. 1 ¶ 18 (Russ Decl.); Ex. 10 at 2. The SBE Executive Director also publicly accused Defendant Secretary of State of prohibiting him and the SBE General Counsel from any further communication with the United States. *Id.* Despite this situation, the United States continued to try to work with Defendants' outside counsel in pursuit of the cooperative enforcement of the Consent Judgment. Ex. 1 ¶ 20. Nonetheless, information provided by Defendants' counsel on Defendants' list maintenance efforts were considerably less detailed than before. *Id*.

In March 2019, the Kentucky Legislature altered the authority of the Secretary of State over the SBE. Ex. 1 ¶ 26; Ex. 16 (HB 114, 2019 Gen. Assembly Reg. Sess. (KY 2019)) (removing the Secretary of State as Chairman and a voting member of the SBE but retaining the Secretary's designation as Kentucky's Chief Election Official). By April 2019, the Department was able to speak to SBE General Counsel directly once again and have more detailed discussions about Defendants' efforts to comply with the Consent Judgment. Ex. 1 ¶ 26 (Russ Decl.).

With these reinvigorated discussions with SBE, the United States communicated with SBE General Counsel and other counsel for the Defendants frequently during the spring and summer of 2019. The United States discussed with Kentucky as it worked towards sending its Section 8(d)(2) mailing (to follow up on canvass mailings returned as undeliverable), discussed procedures for in-county address changes, discussed methods states use to properly track registrants and voter activity in statewide voter registration databases, recommended implementation of audit procedures to ensure accuracy, and continued to provide feedback on

Kentucky's draft comprehensive plan to ensure compliance with federal law.  Ex. 1 ¶ 27 (Russ Decl.).

Nonetheless, the period of time when the Secretary of State apparently forbid communication between SBE staff and the United States impacted compliance with the Consent Judgment.  In particular, Defendants missed a key August 8, 2018, deadline for mailing out Section 8(d)(2) notices to registrants whose canvass cards were returned undeliverable, and it failed to prepare a truly Comprehensive Plan with a detailed description of all relevant procedures.  *See* Ex. 1 ¶¶ 21-22 (Russ Decl.); Ex. 13-14.   Defendants' failure to send out the Section 8(d)(2) notices prior to the 90-day quiet period before the November 2018 election was a key issue.  It meant that registrants identified as having an unreported move outside their jurisdiction of registration could not be removed from the voting rolls after the November 2020 election, if they did not respond to the notice or vote during two federal election cycles after the notice was sent, as originally contemplated by the Consent Judgment.

In June 2019, Defendants finally mailed out Section 8(d)(2) notices to registrants whose canvass card or other election mail had been returned undeliverable by the postal service.  Ex. 1 ¶ 33 (Russ Decl.).   This delayed mailing of the Section 8(d)(2) notices meant that the earliest that these registrants could be removed from the rolls under the NVRA based on an unreported move outside their jurisdiction of registration is after the November 2022 general election.  As a result, there was no longer the chance to see two complete cycles of compliance with the list maintenance requirements of the NVRA under the Consent Judgment by its 2023 expiration date, as originally contemplated.

In August 2019, the United States informed Defendants that it planned seek an extension of the Consent Judgment, in significant part because of the Defendants' failure to initiate the

- 6 -

Section 8(d)(2) mailings on the schedule contemplated by the Consent Judgment. On September 4, 2019, counsel for the United States met with Defendants' counsel in person in Lexington to discuss potential revisions to the Consent Judgment, including a possible extension of the term. At the meeting, Defendants' counsel discussed an updated draft comprehensive plan, and the United States subsequently provided feedback. Among other things, this feedback stressed the importance of establishing auditing procedures to ensure that automated processes produce accurate results. Ex. 1 ¶ 35 (Russ Decl.).

Throughout the enforcement of this Consent Judgment, the United States has attempted to work cooperatively with Defendants to assist Kentucky's compliance with the NVRA and its sending its first Section 8(d)(2) mailings for the first time in 10 years. Ex. 1 ¶ 40 (Russ Decl. )

### B.    A Disagreement Among the Defendants Regarding the Inactive List

This year, a disagreement arose between the Secretary of State's Office and the SBE over the use of an inactive voter list. The Consent Judgment requires the SBE to track registrants who are mailed section 8(d)(2) notices and do not vote, appear to vote, or otherwise have contact with election officials between the date the notice is sent and the second following general election for Federal office. ECF 39, ¶ 34(f), (g). Since at least August 17, 2018, when the SBE submitted its draft comprehensive plan to Plaintiff's counsel and the United States, all parties, including the Secretary of State, were aware that the SBE intended to track these registrants by marking them "inactive" in the Voter Registration System ("VRS").[3] *See* Ex. 13. The parties' counsel engaged

---

[3]  The NVRA does not require states to mark registrants "inactive" during the statutory waiting period, but it is common practice. *See, e.g.*, NATIONAL ASSOCIATION OF SECRETARIES OF STATE, MAINTENANCE OF STATE VOTER REGISTRATION LISTS 7 (Rev. Dec. 2017) (stating that 35 states and the District of Columbia use an "inactive" list, and two states use a "suspense" list, which has the same effect), *available at* http://www.nass.org/sites/default/files/report/nass-report-voter-reg-maintenance-final-dec17.pdf.

in some back-and-forth discussion about when registrants would be marked inactive, but all of the proposals involved marking registrants inactive before the next election following when the Section 8(d)(2) notices were sent.[4]  Ex. 1 ¶ 28 (Russ Decl.).

In May 2019, the parties were discussing finalizing the language on the SBE's section 8(d)(2) notice.  Around this time, counsel Kenyon Meyer, who filed a notice of appearance on behalf of the Secretary of State in March 2019, objected.  Mr. Meyer said that state law forbids registrants from being marked inactive until after the second federal general election after the section 8(d)(2) notice is sent.  Under this interpretation of state law, registrants' time on the inactive list would be very short lived, as the Consent Judgment and the NVRA require that registrants who had been mailed a section 8(d)(2) notice and who had not voted or appeared to vote or otherwise contacted election officials must be removed after the second federal general election subsequent to sending the notices.  *See* ECF 39 at ¶ 34(g); *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833, 1841-42 (2018) ("Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory.").  And importantly, all parties agreed that registrants who were being tracked because they were mailed a Section 8(d)(2) notice are permitted to vote during the intervening two federal general election waiting cycle.  Ex. 1 ¶ 30 (Russ Decl.).

---

[4]  In 1994, the year after the NVRA was enacted, the Federal Election Commission ("FEC") issued guidance to states.  That guidance recognized that "[s]tates will have to decide *when* to designate recipients of [section 8(d)(2) mailings] as 'Inactive.'"  The FEC suggested three possibilities: when the notice is mailed, at an arbitrary date (such as thirty days) after the notice is mailed if no response has been received, or after the voter registration deadline for the next election.  FEDERAL ELECTION COMMISSION, IMPLEMENTING THE NATIONAL VOTER REGISTRATION ACT OF 1993: REQUIREMENTS, ISSUES, APPROACHES, AND EXAMPLES 5-13, https://www.eac.gov/assets/1/1/Implementing%20the%20NVRA%20of%201993%20Requirements%20Issues%20Approaches%20and%20Examples%20Jan%201%201994.pdf.

In June 2019, the parties agreed that a "tag" would be placed on the registration records of registrants who had been sent an 8(d)(2) notice.  The SBE General Counsel informed the parties during a July 8, 2019, call that the only way to "tag" these registrants in the voter registration system was to mark them inactive.  Ex. 1 ¶ 31 (Russ Decl.).   The parties continued to discuss the SBE's efforts to comply with the Consent Judgment, including the SBE's procedures for handling registrants who had been mailed section 8(d)(2) notices, throughout July, August, and September, including an in-person meeting on September 4, 2019, in Lexington.  Ex. 1 ¶ 35 (Russ Decl.).

On October 10, 2019, the Kentucky Democratic Party filed a state court action and motion for a temporary restraining order, alleging, *inter alia*, that the SBE's use of an inactive list violated state law, echoing arguments previously made by counsel for the Secretary of State. *Kentucky Democratic Party v. Kentucky State Board of Elections*, No. 19-CI-1043 (Franklin Cir. Ct. 2019).  The United States participated as *amicus* in the state court case because it was concerned that a rushed temporary restraining order could result in a conflict with requirements of the federal Consent Judgment.  Ex. 1 ¶ 37; Ex. 18 (United States' Statement of Interest).   On October 14, the state court issued an order requested by the KDP, requiring the SBE to use one list of registered voters at the polls and to use an asterisk to denote which registrants had previously been marked inactive.  Ex. 1 ¶ 37; Ex. 19 (state court order).  The parties to the instant case had a telephone call on October 18, 2019, during which Defendants' counsel explained that they could simultaneously comply with both the state court's order and the federal Consent Judgment.  Ex. 1 ¶ 38 (Russ Decl.).

## II.    LEGAL STANDARDS

Under Rule 24(a)(2), Fed. R. Civ. P., a non-party movant has the right to intervene if that movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  The movant must satisfy four requisite factors to justify intervention: "(1) the motion to intervene [must be] timely; (2) the proposed intervenor [must have] a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).  Failure to satisfy any one of the factors justifying intervention requires denial of the motion to intervene.  *Id*.

The timeliness of a motion to intervene is a threshold issue.  *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011).  To evaluate the timeliness of an intervention motion, courts assess (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.  *SEIU Local 1 v. Husted*, 515 Fed. App'x 539, 541 (6th Cir. 2013) (unpublished).  No single factor is dispositive because timeliness is evaluated "in the context of all relevant circumstances." *Blount-Hill*, 636 F.3d at 284.

- 10 -

If a movant satisfies the timeliness threshold, it must also establish the existence of a substantial legal interest by showing "a direct, significant legally protectable interest" in the subject matter of the litigation. *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 418 (E.D. Ky. 2015). The articulated interest must be particularized and sufficient "to make [the intervenor] a real party in interest in the transaction which is the subject of the proceeding." *Providence Baptist Church v. Hillandale Committee, Ltd.,* 425 F.3d 309, 317 (6th Cir. 2005). The substantial interest inquiry is "necessarily fact-specific." *Ark Encounter, LLC*, 311 F.R.D. at 418. In addition, a proposed intervenor must establish that the disposition of the action where it seeks intervention would impair its interest. Fed. R. Civ. P. 24(a)(2); *Purnell v. Akron*, 925 F.2d 941, 948 (6th Cir. 1991).

Finally, a proposed intervenor of right must establish that its interests are inadequately represented. *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000). When a proposed intervenor shares the same ultimate objective as a party to the suit, it also bears the burden of overcoming the presumption that the parties before the court will adequately represent its interests. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). A proposed intervenor satisfies this burden by showing "that there is a potential for inadequate representation." *Michigan*, 424 F.3d at 443-44. The burden is minimal but when there is no evidence of (1) collusion between the parties, (2) that the parties and the proposed intervenor's interests in the litigation may diverge, or (3) that the parties fail to fulfill their duty to represent, there are insufficient facts to establish the potential for inadequate representation. *Bradley*, 828 F.2d at 1192. Establishing inadequate representation is a necessary requirement to intervene as of right. *Michigan*, 424 F.3d at 445.

- 11 -

In the alternative, a movant may seek to intervene permissively under Rule 24(b)(1). To establish sufficient grounds for permissive intervention, a movant must show (1) that their application to intervene is timely and (2) that they have a conditional right to intervene by a federal statute or a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1); *Blount-Hill*, 636 F.3d at 287. District courts have broad discretion to refuse permissive intervention and determinations must be guided by considerations of undue delay or prejudice to the adjudication of the rights of the existing parties. Fed. R. Civ. P. 24(b)(3).

## III.    ARGUMENT

### A.    The KDP Does Not Satisfy the Standard for Intervention as of Right

The KDP's motion to intervene is untimely because this case was filed almost two years ago, this Court entered its Consent Judgment 15 months prior to the instant motion, and the KDP knew, or should have known, of its interest in this action. Moreover, the KDP should not be permitted to (a) raise generalized interests and grievances regarding the SBE's interpretation of state law or (b) convert its state court action, which seeks to raise disputes with the SBE's interpretation of the Kentucky election code, into an alleged substantial interest to intervene in this matter. Because the KDP's interest is in how Kentucky officials interpret state law, not enforcement of the NVRA, its interests will not be impaired if intervention is denied. To the extent the KDP alternatively asserts an interest in ensuring that designations of inactive status are "true and correct" and "voter information is correct and properly handled," ECF No. 46 at 3, its articulated interest does not diverge from the interest of the United States and is adequately represented.

- 12 -

### 1.    The KDP's Motion Is Untimely

Timeliness is a threshold factor when determining whether intervention is within the discretion of the court evaluating the motion. *Bradley*, 828 F.2d at 1191. The Sixth Circuit measures the timeliness of an intervention motion by examining all the circumstances of a particular case, not when the motion is filed. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000). Here, the KDP fails to satisfy the five factors that guide the examination of whether its intervention motion is timely. *Id.* at 473.

### a.    This suit has progressed to settlement and the parties to this action will be unduly prejudiced by the KDP's failure to intervene when it knew or reasonably should have known of its interest in the case.

The KDP rests its timeliness argument on the timing of Judicial Watch's motion to modify the Consent Judgment. ECF No. 46 at 6. But "the point to which the suit has progressed" is the relevant consideration here. *See Stupak-Thrall*, 226 F.3d at 473 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). Under the circumstances of this case, the KDP seeks to intervene almost two years after Judicial Watch filed its complaint, and some 15 months after the United States intervened and this Court entered the negotiated Consent Judgment aimed at resolving the parties' NVRA claims. The parties have continued working on efforts to bring Kentucky into compliance with federal law after years of non-compliance. The circumstances of this case also reveal that, to the extent the KDP advances a view about inactive lists *under state law* and how voter registration records should be presented at the polls on Election Day, *see* ECF 46 at 2, this interest should have been known long before now, in light of references to state law, inactive lists, and returning registrants to active status, in the Consent Judgment itself; as well as the state's representations about the contents of its voter registration list to the EAC. S*ee* ECF. No. 39 ¶¶ 24-28, 34(f); *see also* Ex. 3 at Questions B1-B7 (2016

survey response).  For example, in response to a 2016 question from the EAC regarding when registrants are removed from the rolls for an unreported move outside their jurisdiction of registration (not merely moved from active to inactive status) the SBE referred to Ky. Rev. Stat. Ann. 116.0452, which sets forth the same two federal general election time period for removal as the NVRA.[5]  Ex. 3 at Question B3.  Moreover, Kentucky reported inactive registrants in every two-year cycle beginning in 1995-1996, with the exceptions of 2006, 2016, and 2018.  Ex. 4. When, as here, an entity is aware of the impairment of its interest, it is "obligated to seek intervention as soon as it is readily apparent that it is entitled to intervene."  *United States. v. Tennessee*, 260 F.3d 587, 594 (6th Cir. 2001) (denying request for intervention when the settlement specifically addressed interests proposed intervenor sought to protect).  Under these circumstances, the use of an inactive status for tracking registrants who have been sent a Section 8(d)(2) notice was widely known and the KDP's delayed interest in the use of inactive status under the Consent Judgment weighs against a finding of timeliness.

>    **b.    The KDP seeks to advance its state law interpretations and ensure that the list maintenance process is "properly handled."  Both purposes are adequately represented by parties to this action.**

The Sixth Circuit also evaluates timeliness by assessing the purpose for which a movant-intervenor seeks to participate in an action.  *Tennessee*, 260 F.3d at 592, 593.  Here, the KDP has not filed a proposed complaint or answer in intervention to clearly delineate its proposed litigation role in this case.  *See* Rule 24(c) (motion to intervene must be accompanied by a pleading setting out claims or defenses).  Nonetheless, to the extent the KDP seeks to intervene to advance its "concerns and demands" regarding the requirements of Kentucky law whenever it

---

[5] Kentucky indicated no change from 2014 to 2016 in its 2016 survey response. Ex. 3 at Question B3.

differs from the SBE, its late recognition of that interest does not constitute a sufficient purpose for intervention at this stage of the proceeding. *See Cuyahoga Valley Ry. Co. v. Tracy,* 6 F.3d 389, 396 (6th Cir. 1993) (finding that a motion to intervene was untimely and that proposed intervenors could have recognized their interests in the matter far earlier than when they intervened).

Likewise, the KDP's interest in identifying and correcting alleged errors is adequately represented by the United States and is therefore an insufficient purpose for intervention. *See Stupak-Thrall*, 226 F.3d at 476 (denying intervention when movant failed to explain how they had different concerns than the federal litigant). The NVRA requires the administration of list maintenance practices in a manner that is uniform, nondiscriminatory, in compliance with the Voting Rights Act, and designed to safeguard against the removal of eligible registrants from the voter registration list. *See e.g.*, 52 U.S.C § 20507(b), (e). The United States carefully negotiated the Consent Judgment and continues to enforce it with these requirements in mind. *See* Ex. 1 ¶¶ 10-11 (Russ Decl.).[6] In addition, the Consent Judgment imposes an obligation on the Secretary of State and other Kentucky officials to work cooperatively and collaboratively with all parties to this action, which necessarily includes working collaboratively to correct and prevent errors that may arise. *See* ECF No. 39 at ¶ 39. Indeed, the Secretary of State and SBE are both undertaking actions to identify and correct errors. *See* Ex. 1 ¶ 35 n.1(Russ Decl.).

---

[6] The Department of Justice is charged by Congress with the responsibility for enforcement of the federal voting rights laws, including the NVRA. The Department has enforced the NVRA all across the country and defended its constitutionality since its enactment in 1993. As the D.C. Circuit has noted (in the context of a case under the Voting Rights Act), courts should not "lightly infer" that the Department is not adequately performing its statutory obligations under these federal voting rights laws. *Donnell v. United States*, 682 F.2d 240, 247 (D.C. Cir. 1982). That should be particularly true here, where the Department has undertaken to negotiate a carefully crafted settlement to resolve long-term NVRA non-compliance and to work cooperatively with Defendants on its implementation.

- 15 -

Because the KDP's interest in properly handling voter data and correcting discoverable errors is of importance to all parties to this action, its interests are adequately represented.

Similarly, both Defendant Secretary of State and the KDP seek the same outcome for the specific interest KDP articulates in its motion: an interpretation of state law requiring one "Master List" to be used at the polls on Election Day, with all registrants (active or inactive) on it. KDP and Defendant Secretary of State achieved this outcome in the state court proceeding, which resulted in an order requiring a single list (a master list of registrants with names marked with asterisks if they did not respond to the confirmation mailing). Ex. 19 (state court order). Defendants Secretary of State and SBE represent that they will comply with both the state court order and the Consent Judgment. Because the state court granted relief to the KDP in resolving the issue about the use of a "Master List," and because Defendant Secretary of State and the KDP sought the same outcome in state court, the KDP's interests are also adequately represented in this case. *See Stupak-Thrall*, 226 F.3d at 475; *Ark Encounter, LLC*, 311 F.R.D. at 426 (denying intervention when the proposed intervenor failed to explain how "they would actually present different arguments that would contribute to the litigation").

When, as here, the circumstances of the case indicate that the purpose of intervention and the responsibilities of the parties cannot meaningfully be differentiated, the stated purpose for intervention is insufficient to support a finding of timeliness. *Stupak-Thrall*, 226 F.3d at 477.

> **c.    The absence of unusual circumstances also weighs against intervention.**

Finally, the KDP did not identify any unusual circumstances that warrant intervention, an additional factor that weighs against a finding of timeliness. *Stupak*-Thrall, 226 F.3d at 478 (refusing to find a proposed intervenor's motion timely when the movant failed to present unusual circumstances).

For all of these reasons, the KDP has failed to meet the timeliness threshold, and denial of intervention as of right is appropriate. *Bradley v. Milliken*, 828 F.2d at 1191.

### 2. The KDP's Generalized Concern and Dispute with State Officials Over the Interpretation of State Law Does Not Establish a Substantial Interest

A substantial interest exists when the movant is a "real party in interest in the transaction which is the subject of the proceeding." *Providence Baptist Church,* 425 F.3d at 317 (internal citations omitted); *see also Reliastar Life Ins. Co. v. MKP Investments*, 565 Fed. Appx. 369, 371-72 (6th Cir. 2014) (unpublished) ("But our case law's requirement that the proposed intervenors possess 'a significant legal interest in the subject matter of the litigation' is not without meaning. . . . Instead, the applicant for intervention 'must have a direct and substantial interest in the litigation,' such that it is a 'real party in interest in the transaction which is the subject of the proceeding.'") (internal citations omitted). The KDP identifies itself as "a beneficiary of Kentucky law regarding the duties of Defendants"; "an interested party . . . actively involved in ensuring voter information is correct and properly handled"; and asserts that it "represents voters and the interested public across the Commonwealth of Kentucky" and participates in activities such as voter engagement, voter education, and voter protection, as well as obtaining and distributing voter registration information for a range of entities interested in political activity. ECF No. 46 at 1-3. These generalized assertions on behalf of Kentucky's body politic fails to allege concrete and particularized facts sufficient to establish a legal basis for intervention as of right. *See Ark Encounter, LLC*, 311 F.R.D. at 420 (denying intervention when movant failed to demonstrate more than a general interest).

The KDP also alleges it has an interest that stems from vague and unsupported allegations of "misconduct or inaction" by Plaintiffs and Defendants, which "forced [its] initiation of a state court" proceeding. ECF No. 46 at 2. But the KDP does not allege that it was

unaware of this Court's Consent Judgment.  *See* ECF No. 46.  In fact, the KDP essentially concedes that it should have known its interests would be implicated when it asserts that the actions of Defendants under the Consent Judgment "forced [it]" to file a state lawsuit.  ECF No. 46 at 2.

Defendants are responsible for administering Kentucky's elections laws, and it was foreseeable that the SBE would interpret what state law requires of it.  *See* KY. REV. STAT. ANN. § 117.015(1); *see also Tennessee*, 260 F.3d at 594 (When "[a]n entity…is aware that its interest may be impaired by the outcome of litigation [it] is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene.").  To the extent the KDP has now decided that it does not prefer the SBE's interpretation of state law, its "wait and see" approach does not create a substantial interest that would warrant intervention. *See Cuyahoga Valley Ry. Co.,* 6 F.3d at 396; *Jordan*, 207 F.3d at 862-63 (denying intervention when movant was "silent" through the litigation process and permitted the parties to resolve the case).  Further, although the KDP now disagrees with the SBE's interpretation of state law, its interests are not impaired because it can continue to advance its state law arguments in state court while Defendant Secretary of State advances the same interests in this action.[7]

---

[7]  Ordinarily, a party that objects to a consent judgment or its implementation should timely move to intervene in that case, rather than filing a separate case to collaterally attack the consent judgment.  *See, e.g.*, *Black and White Children of Pontiac Sch. Sys. v. Sch. Dist. of City of Pontiac*, 464 F.2d 1030 (6th Cir. 1972).  This rule serves to ensure that all related issues are before one judge, and that the judge hearing the new issues is the one who is already familiar with the case.  Here, however, the KDP filed a lawsuit in Kentucky state court long after the Consent Judgment was entered and then only moved to intervene in this case after the United States filed a statement of interest in the state court case.  The United States opposed the KDP's motion seeking a temporary restraining order in the state court case on the eve of the November election based on a concern that the KDP was attempting to collaterally attack this Court's Consent Judgment.  The state court subsequently issued its ruling granting relief to KDP. Importantly, Defendants now agree that they can comply with both the state court order and the Consent Judgment.  Hence, there is no need for KDP to intervene here.  In the event that the state

**3.      The KDP and the Parties to this Action Share the Same Interest in Using "True and Correct" Information for List Maintenance Activities and the KDP's Interest Will Not be Impaired if Intervention Is Denied**

The KDP does not allege there is collusion or that the organization's interests and the interests of each party in this action diverge.  *See* ECF No. 46.  In addition, the KDP does not articulate an approach or reasoning for enforcing the NVRA that differs from those of the parties. Instead, the KDP asserts an interest in "assisting" the Kentucky State Board of Elections "and other parties to this action" in correcting errors, properly handling voter data, and using "true and correct" information to place a voter on an inactive list.  ECF No. 46 at 1-3, 6.  The KDP's vague interest in assisting the parties is insufficient for intervention because the KDP and the United States shares the same ultimate goal of ensuring that all procedures implemented comply with the Consent Judgment and federal law.  *Jordan*, 207 F.3d at 863 (finding movant-intervenor did not satisfy its burden when it could not identify a party that failed to advance its interest). Moreover, intervention in this lawsuit is not required for the KDP to achieve these goals.  The KDP could also achieve its goals by engaging in typical advocacy efforts, such as filing an *amicus* brief, attending SBE meetings, meeting with staff members of the Secretary of State and SBE staff, and filing public records requests.

The Attorney General is charged with enforcing the NVRA and ensuring that the maintenance of Kentucky's voter registration list is "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965."  52 U.S.C. § 20507(b)(1).  Given the clear duty the NVRA imposes on the administration of programs designed to protect the integrity of the electoral process, it is unclear how the KDP's interest in ensuring "that all information used to

_____

court issues any orders in the future that are inconsistent with the Consent Judgment or federal law, the parties can bring such orders to this court's attention for further action.

place a voter on an inactive list be true and correct" differs in any way from the United States or any party to this action. KDP has certainly not supported its vague assertion that it is a necessary party to this action whose presence is necessary for complete relief. *See* ECF No. 46 at 5. Under these circumstances, the KDP fails to establish inadequate representation and the motion to intervene should be denied.

**B.    The KDP's Failure to Comply with Rule 24 Is Unduly Prejudicial**

The KDP's failure to comply with the requirements of Rule 24(c) is unduly prejudicial. Rule 24(c) requires that "[a] motion to intervene … must state the grounds of intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." In this case, the KDP has failed to file a proposed pleading with its motion to intervene (either a complaint or answer) setting out the claims or defenses for which intervention is sought. Without such a pleading, it is unclear if the KDP is trying to enter this case as a plaintiff-intervenor or as a defendant-intervenor. It is also unclear what claims or defenses KDP purports to assert and whether any claims or defenses share any common issues *of federal law* under the NVRA with the existing case. KDP's filing includes only vague and unsupported allegations unaccompanied by any sworn statement, that at most seem to implicate *state law*. At bottom, the KDP invites this Court to use Rule 24 to open the door to intervention to almost any entity interested in the conduct of elections, long after the parties in the action reached a settlement. *See Ark Encounter, LLC*, 311 F.R.D. at 422 ("An interest shared generally with the public at large is not sufficient for intervention").

Here, KDP filed an action in state court that raised state law issues. With the KDP having obtained the last-minute order it sought in state court in advance of the November 2019

election, there is even less reason for KDP to be allowed to intervene here to further pursue its state law issues, particularly in the absence of any asserted common issue under federal law.

The pleading requirement in Rule 24(c) is of particular applicability here, where there is a strong possibility that intervention will delay vindication of the rights of the original parties.[8] The KDP's failure to comply with Rule 24(c)'s pleading requirement, particularly given its generalized and vague assertions, unfairly prejudices the existing parties and further supports denial of intervention. *See* ECF No. 46; Fed. R. Civ. P. 24(c).

### C. Permissive Intervention Will Result in Undue Delay and Prejudice to the Parties

This court should also deny permissive intervention. As discussed above, the KDP's motion is untimely, which is fatal to its request to intervene permissively. Fed. R. Civ P. 24(b)(1). Moreover, permissive intervention is appropriately denied when it "will inhibit, not promote, a prompt resolution . . . ." of an action. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007). Here, concern over delay and prejudice to the parties is particularly apparent because the KDP has imprecise and vague interests that it seeks to assert in this action that arise under its interpretation of state laws, not the NVRA. *See generally* ECF No. 46. Although the KDP's perspective is different from that of the SBE regarding the use of an inactive list, as reflected by the state court action, the KDP has not demonstrated that its contribution to this action will "add unique value such that intervention is necessary" because the

---

[8] The KDP's vague assertion that it is in a similar position as the Ohio Democratic Party in *Miller v. Blackwell*, 348 F. Supp. 2d 816 (S.D. Ohio 2004) is unavailing. *See* ECF No. 46 at 8. In *Miller*, the Ohio Democratic Party was one of the plaintiffs who filed the original complaint that raised specific issues of non-compliance with federal law. By contrast, KDP has moved to intervene here long after the consent judgment was entered to resolve issues of non-compliance with the NVRA and the KDP has not articulated any violation of federal law not already addressed by the Consent Judgment.

interest and arguments of Defendant Secretary of State and the KDP align. *See Ark Encounter, LLC*, 311 F.R.D. at 426. The KDP's invitation to involve this proceeding in state law disputes more appropriately resolved in state court, should be rejected.

Further, although the existing parties have certain disagreements about Defendants' compliance with some terms of with the Consent Judgment, the United States has attempted to work collaboratively with Defendants to achieve compliance. The United States has sought to resolve as many issues as it can through discussion with Defendants' counsel, including using its experience and expertise in enforcing the requirements of the NVRA nationwide to discuss best practices. Ex. 1 ¶¶ 12-13, 27, 40 (Russ Decl.). Adding a new party late in the process will not advance the Parties' or this Court's interest in ensuring compliance with the Consent Judgment. To the extent the KDP would like to weigh in for a given motion with its views of state law, participation as *amicus* would achieve the same end.

## IV.    CONCLUSION

This Court should deny intervention because the KDP's motion is untimely, the KDP fails to establish a substantial legal interest in this action, the KDP's interests will not be impaired, and the KDP seeks to advance interests adequately represented by the parties. Moreover, permitting this untimely intervention permissively would likely thwart the continued cooperative enforcement of this Court's Consent Judgment by forcing the parties to resolve state law procedures that are appropriately resolved in state court. Alternatively, the Court can permit the KDP to participate as *amicus* to allow it to express its views without entering the case as a party.

Date: November 4, 2019

Respectfully submitted,

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

ELLIOTT M. DAVIS
Acting Principal Deputy Assistant Attorney
General
Civil Rights Division

*/s/* Jenigh J. Garrett
*/s/* Michelle Rupp
T. CHRISTIAN HERREN, JR.
JOHN A. RUSS, IV
MICHELLE RUPP
JENIGH J. GARRETT
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.1134
Washington, D.C. 20530
Telephone: (202) 305-4777
Facsimile: (202) 307-3961
Email: michelle.rupp@usdoj.gov
Email: jenigh.garrett@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2019, a true and correct copy of the foregoing

document was served via the Court's ECF system to all counsel of record.


<u>/s/ Michelle Rupp</u>
Michelle Rupp