ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION, FRANKFORT

| | |
|---|---|
| JUDICIAL WATCH, INC.             Plaintiff  And  UNITED STATES OF AMERICA             Plaintiff Intervenor  v.  ALISON LUNDERGAN GRIMES, et al             Defendants | ) ) ) ) ) ) ) ) ) ) ) ) )   Civil No. 3:17-cv-00094-GFVT |

**<u>KENTUCKY DEMOCRATIC PARTY'S RESPONSE TO JUDICIAL WATCH AND DOJ'S OPPOSITION TO INDEPENDENT OVERSIGHT</u>**

\* \* \* \* \* \* \* \*

Comes the Movant, Kentucky Democratic Party (KDP), by counsel, and for its Reply to Plaintiff Judicial Watch and the Department of Justice, in support of its motion to intervene, would show this Court as follows:

**SUMMARY**

KDP is currently negotiating an Agreed Order in the Franklin Circuit Court, Civil Action No. 19-CI-1043. Important issues of state law are before the state court, which has already entered an emergency Order containing a temporary injunction to protect the rights of Kentucky voters. KDP asserts that it should be allowed to intervene in this action to provide sorely needed oversight in the implementation of this Court's Consent Judgment of 7/3/18, as demonstrated herein.

Judicial Watch and the Civil Rights Division of DOJ jointly argue that KDP should not provide independent oversight to protect Kentucky voters. Judicial Watch and DOJ praise each other and SBE staff, assuring this Honorable Court that all voters' rights are well guarded by the current participants in this action. See: *Plaintiff Judicial Watch's Opposition Motion* of 11/4/19, at p. 1-3; R. 52 *United States Memorandum in Opposition* of 11/4/19, R. 53, at pp. 2-4. (herein "*Judicial Watch's Opposition*" and "*DOJ's Memo*," respectively.)

Those claims are entirely unsupported by the factual evidence of record.  DOJ and Judicial Watch attempt to gloss over KDP's exposure of the massive ongoing legal violations created by their botched oversight of this Honorable Court's Consent Judgment of 7/3/18.

Neither DOJ nor Judicial Watch informs this Court that their failed oversight exposed approximately 175,000 Kentucky voters to unlawful deprivations of their core Constitutional rights, and currently exposes 24,667 more Kentucky voters to the same fate. (See discussion *infra*. at numerical paras. 1 and 10). Additionally, SBE Board members have questioned why 18,000 additional active voters have been erroneously listed as inactive by SBE staff. (Id., at numerical para 4 *infra*.)  None of those issues was disclosed to this Court, or has been addressed or remediated by Judicial Watch or the DOJ.

The damage to Kentucky voters and the related costs to the state are not due to this Court's Consent Judgment. Rather, the system broke down when DOJ and SBE inexpertly implemented the Consent Judgment without honoring federal and state laws, including those forbidding striking voters from the Master List prior to the expiration of two federal election cycles.

The Consent Judgment did not cause SBE to bungle its implementation; the Judgment correctly recites the controlling laws. The Consent Judgment also does not foreclose KDP's

investigation and public exposure of SBE's errors. Kentucky voters deserve the protections guaranteed by law, and it is clear that neither Judicial Watch nor the DOJ have any interest in providing such protections.

DOJ and Judicial Watch have not only failed to inform this Court of the unresolved issues in KDP's state court Complaint, they have also neglected to apprise the Court of multiple issues currently being actively negotiated in a draft Agreed Order, created at SBE's request. This is shocking, given that Judicial Watch and DOJ claim to be very closely allied with SBE, and purport to be closely monitoring SBE's tactics in dealing with Kentucky voters (as any party charged with oversight must be.)

KDP will accurately advise the Court on the status of this state court case, since DOJ and Judicial Watch are unwilling or unable to do so.

**SBE itself requested that a Permanent Injunction be entered by Agreed Order in the state court action**. KDP is in negotiations concerning the terms of this proposed Agreed Order. See: Exhibit 1, Emails between KDP and SBE, setting out the Agreed Order terms as currently proposed, pp. 1-12; 19.

These ongoing negotiations include the following ten (10) items, (all of which are fully set out in Exhibit 1, pp. 1-12; 19):

1. **SBE must eliminate the unnecessary use of Oath of Voter affidavits**, as Ordered by the Franklin Circuit Court and as required by federal law. (See: Exhibit 1, pp. 1-2, "**OOV Issues**", citing 52 USC 20507(e)(1)-(3), *inter alia.*) Following the state court Order and federal law also simplifies Clerk training and eliminates red tape. KDP submitted this proposed Agreed Order language to SBE on 10/30/19 and awaits response. Id., at p. 2. KDP hopes that SBE will

3

follow the emergency Order voluntarily, but the state court retains inherent authority to enforce compliance in any event.

2. **SBE must approve Clerk training**. KDP's Complaint states: "SBE has replaced the standard voting process with a complicated and continuously changing substitute process, created and implemented without formal board review or approval." See: Allegation One, KDP Complaint. SBE actually admits that it has failed and refused to produce ANY minutes documenting ANY actions taken by the SBE for the months of September and October. See: Exhibit 1, email of 10/29/19 (5:10:02), p. 1 at para. 1.

Aside from being a shocking dereliction of public duty, this is also a violation of the state court Order which directs SBE to develop and administer approved training. This inexplicable neglect prevents this Court, the state court, or any member of the public from knowing what, if any, official actions SBE has taken during the past few eventful months. DOJ should explain why its oversight has not detected this wholesale collapse of the most fundamental agency procedure.

3. **SBE refusal to allow IT consultation**. SBE invited KDP's IT experts to engage with SBE staff to ensure a thorough understanding of the system. SBE now refuses to allow KDP to exercise this right, while at the same time offering full accommodation to the Republican Party of Kentucky (RPK), in violation of any accepted notion of impartiality. (See discussion *infra*.)

The current state proceeding will allow KDP to raise this issue of disparate treatment under state law, which it will do if negotiations for an Agreed Order prove unproductive. DOJ is also invited to examine this disparate treatment as part of its continuing oversight duties.

4. **SBE failed to remove 18,000 voters from the inactive list despite each one of them voting in the 2018 elections.** According to SBE Member George Russell, SBE staff neglected to

place 18,000 current and active voters on the general voter list. See: SBE Meeting Transcript of 9/17/19, at pp.21-22. (This allegation is fully set out in KDP's Complaint, attached to Judicial Watch's Response as an Exhibit, Complaint pp. 14-15, paras. 61-69.)

Despite this unimpeachable source, SBE's General Counsel pretends that she does not understand the question, stating: "You continue to make accusations ... but I have been given no factual proof of this allegation." See: Letter from SBE to KDP counsel of 10/18/19, at p.1. Exhibit 2.

SBE staff's refusal to address issues actually raised by its own Board members suggests unaccountability to anyone. Perhaps DOJ can get an accurate answer about this grave concern expressed by a seasoned Board member as part of its oversight duties.

This pressing issue affecting 18,000 actual current Kentucky voters cannot be ignored. It will be examined in the pending state court action. KDP is happy to provide this Honorable Court with such updates as this Court may deem advisable during the pendency of the state court action.

**5. Audit Protocol Violations.** SBE has also been credibly accused of making untrackable changes to the VRS, which is one of the most serious breaches of auditing protocol that can occur. See: KDP Complaint, pp. 16-17, paras. 82-88. SBE has offered no evidence to rebut this deeply disturbing charge and refuses to produce public documents properly requested under Kentucky's Sunshine Law, KRS 116.112(8).

This is obviously a matter for the state court to take up in the ongoing action. If SBE will cooperate, it is a wonderful opportunity to reassure Kentucky voters about the safety of their voting system. KDP is concerned that SBE's constant stonewalling will undercut public

confidence in elections, and so is offering every opportunity for SBE to make a positive public showing in which all parties may join.

SBE should embrace this opportunity to demonstrate a robust VRS protection and tracking system in order to reassure the voting public that it is meeting minimal VRS protection standards. If changes are not trackable, the VRS is at imminent risk. (Again, allowing IT professionals to interact will facilitate this process).

**6. Denigration of the Kentucky Secretary of State does a disservice to this Court.** Proper respect is due any elected state official who is addressed in any federal action. Despite this, DOJ, Judicial Watch and SBE have all made rash and unfounded criticisms of the Chief Election Officer of the Commonwealth of Kentucky. These are gratuitous slanders, not relevant to any point before the Court, and serve only to tarnish the justified reputation this Court as a keen observer of the rules of comity.

This Court must not sanction such action. Perhaps a reminder is required that the officers of this Court are expected to exhibit more restraint in these proceedings than is currently evident.

**7. SBE's Continuing Violation of State Sunshine Laws.** SBE is currently in violation of KRS 116.112(8), which requires it to "**make available for public inspection...all records concerning...activities conducted for the purpose of ensuring the accuracy and currency of the voting records.**" This plainly encompasses "all records" regarding every "activity" undertaken by SBE concerning the voter lists.

SBE, however, refuses to recognize any obligations under this voter protection Sunshine Law. Instead, SBE will only recognize an Open Records request under Kentucky law, with all of its attendant exceptions and delays.

This clear violation of Kentucky law is now properly before the state court. Should Kentucky law be found insufficient to compel the production of these critical documents, KDP reserves the right to seek relief under federal law.

8. **DOJ Should Advise Whether SBE can legally conceal meeting notes, emails and texts.** DOJ should assist the Court and parties by stating whether it believes SBE is entitled under federal law to conceal all records of its meetings, emails, texts and other documents relating to list maintenance, as SBE claims. This is surely a part of DOJ's "oversight" role.

2020 is fast approaching, and all parties are under a duty to cooperate in good faith. This is a simple test of whether the parties are capable of accomplishing this.

**9. SBE Failed to Scrub 300,000 Voter Cards.** Item 9 on the Agreed Order negotiation list concerns troubling information released in a private meeting between SBE and RPK.

SBE met privately with the Republican Party of Kentucky (RPK) on 10/3/19. RPK did not attend the public meeting to which KDP had earlier been invited, despite SBE's assurance to KDP that it would. Instead, RPK arranged a later separate meeting in which it was provided substantially different information than was provided to KDP. See: RPK/SBE Transcript of 10/3/19, attached hereto as Exhibit 3, pp. 5, 6, 40, 50.

This transcript includes a problematic admission that SBE did not check to see which voters updated their information after the first massive mailing of 600,000 notices. SBE's General Counsel states:

"But because there was a year lapse between the mailing-- the canvas[s] mailing and the [8]D2 mailing, there are people, and this has been their received second postcard and this is because we hadn't done it in a while, **we didn't scrub at that point to see who might have updated their information.**" See: RPK/SBE Transcript of 10/3/19, at p. 15, emphasis supplied.

7

This clear admission states that 300,000 voter's cards, (those returned after the first mailing of 600,000), were not properly "scrubbed," which unlawfully burdens actual voting members of the public who should not be listed as inactive.

This failure to reinstate voters who updated their information no doubt accounts for many of the 18,000 Kentuckians who voted in 2018 but were still not on the Master List in September of 2019. See: KDP's Complaint, pp.14-15, and Item 4 *supra.* It also undoubtedly burdens many more voters as well.

Note that the public is very lucky to have this information at all, because SBE declared the meeting with RPK to be "private" and escorted concerned citizens to the door when they tried to attend. See: RPK/SBE Transcript at p. 2. KDP had earlier demanded that this meeting be recorded, when it learned that RPK would not attend the public meeting with KDP, but would instead seek this private audience.

SBE did record the meeting, but denied that it was required to, and gave RPK the opportunity to refuse to have it recorded. (See: Exhibit 3, RPK/SBE Meeting Transcript, p. 5.) This is a violation of SBE's duty to keep "all records" relating to list maintenance under KRS 116.112(8). Clearly, this is a matter for the state court to decide, if SBE persists in its claim that these records should not be maintained for the statutorily required time period.

Once again, DOJ has some explaining to do. DOJ expends pages praising itself for its close monitoring of every aspect of SBE's actions, and claims that it has even established "auditing procedures to ensure ... accurate results." DOJ Memo at p. 7.  Nothing in the record shows that this had any positive effect.

DOJ should explain how its "auditing procedures" missed the fact that 300,000 voter cards were never scrubbed at all, resulting in the improper burdening of at least 18,000 voters.

DOJ should also consider that the public might not get this critical information next time, since SBE refuses to record its activities and DOJ has thus far failed to ensure that it does.

KDP believes this matter is best resolved in respectful and productive negotiations which will result in a public announcement of improved procedures. The record abundantly establishes the need for these improvements. Unfortunately, it also reveals the refusal of DOJ, Judicial Watch and SBE to negotiate in good faith. This Court should require their fruitful participation, and recognize that the compulsory processes of state court may be employed to achieve this goal.

**10. SBE wrongly placed an additional 24,667 voters on an Inactive list.** The tenth item on the Agreed Order negotiation list was sent to SBE on 11/2/19, so that action could be taken prior to the election to remedy this clear breach of Kentucky law.

The record is clear that no County Board of Elections issued to SBE any statutorily required "authorization" letter seeking creation of an inactive list. The record is also clear that SBE Board Members never took action to grant any requested authorizations. Both of these actions are required prior to any designation of these voters as "inactive." KRS 116.112(3)-(4).

SBE's own records clearly reveal this major violation of Kentucky voter protection laws.  Of the 288,919 voters with "returnMailDate" set, 264,252 were set by scanning postcards, while 24,667 were set by Clerks.

Although SBE has not yet provided the requested public records to KDP, our research via other avenues indicates that SBE is in clear violation of law. No voter may be placed on the inactive list without following the mandatory procedures laid out in statute.

SBE has, regrettably, failed again to respond to this serious charge. It is hoped that greater cooperation will be forthcoming now that the election has passed. SBE's continuing refusal to be transparent in providing requested documents creates the impression of a cover-up,

9

even if that is not SBE's intent. For the sake of public confidence in elections, KDP again urges SBE to reconsider this stonewalling. The 2020 election fast approaches, and SBE and DOJ need to respond appropriately.

The state court will be asked to restore these 24,667 Kentucky voters to their rightful status as voters, not "inactive" voters, should SBE continue to be nonresponsive.

SBE may refuse to negotiate in good faith on some or all of these outstanding issues, but that is a reason for this action to proceed in state court, so that discovery may proceed through compulsory processes, if needed, and issues that are unique to state law may be resolved. The federal courts retain plenary authority to hear appropriate cases arising from SBE's violations of voter protection laws. SBE, DOJ, and Judicial Watch should join in this responsible endeavor, rather than trying to keep the public in the dark about the poor implementation of this Court's Consent Judgment.

## ARGUMENT

**I. SBE Confirms that KDP has a "Direct and Substantial" Interest in this Litigation.**

DOJ and Judicial Watch offer identical arguments filed nearly contemporaneously, showing that they are fully coordinated in advising this Court to reject KDP's participation in this case. Interestingly, both DOJ and Judicial Watch seize upon KDP's supposed lack of "direct and substantial interest" in the matter as the cornerstone of their shared argument. *DOJ Memo*, at p. 17; *Judicial Watch Opposition* at p.15-16.

This position is certainly not shared by SBE, which identifies KDP as an essential "stakeholder", entitled to receive sensitive information forbidden to the general public. Obviously, this completely eviscerates DOJ and Judicial Watch's argument.

10

SBE Executive Director Jared Dearing explained that the general public would be excluded from meetings with the RPK, because the rights of political parties exceed those of the average taxpayer or voter. The Executive Director states:

> "I mean, and that's [the] frustrating part about [a concerned citizen] Bruce Maples being here is--- it's not-- this is not a meeting that is about closed door sessions and secret meetings. **It is about the parties who are stakeholders** in this process having an opportunity....to better understand how this process works, how its going to be, how the list maintenance process is currently being activated, and how it will continue to move forward as we move both through the consent decree and just the normal activities of listening to this process"
>
> "[A concerned citizen] wanting to be here, that's fine but that's not what these meetings are intended for. So that being the case, I think we can just move on now at that point."
> ....
> "MR. BROWN: Last question, so do the people at the KDP, were they comfortable with the system or not?
>
> MR. DEARING: I think they have-- they have frustrations that, you know, we're working through....**we want this to be an open process that the stakeholders have access to**, can understand how it works with the understanding that we are under a federal consent decree....I think its appropriate to have conversations about that and find...solutions that are amenable to all parties involved. Right?....**there's ownership with the parties which is why I believe that you guys have a right to be in this room and it may not be open to the public necessary [sic] because you should be able to hear things that not everyone hears because it is security for general public reasons, but you are also stakeholders to this**."
> ....
> "MR. DEARING: If you guys have any questions at all, you know, the same thing I said to KDP, you guys are welcome in this office at all times. You guys want to come and visit us in person, you're welcome. You have phone calls, you just have questions that come up, hey, I want to know how this works, call us. (End of recording.)"

RPK/SBE Meeting Transcript of 10/3/19, at pp. 5-6, 40-41, and 50, emphasis supplied for clarity, attached hereto as Exhibit 3.

SBE plainly considers RPK and KDP special "stakeholders" in this matter. SBE actually **excludes the public** from RPK meetings on this basis. Matters that affect voter rights and state law protections are not to be concealed in this manner. KDP plainly told SBE that this

11

information must be made publicly available as a matter of state law. SBE has been unable to show otherwise or to respond to KDP's request. See: Exhibit 1, p. 5 . State Court is the appropriate forum to enforce these key provisions of state law for the protection of Kentucky's voters.

Regardless of SBE's rationale for its past actions, it is critical that these "private" meetings with "stakeholders" be properly documented for public review. The failure to scrub 300,000 voter notices was **never disclosed to KDP**. It was only discovered by reading the RPK/SBE Meeting Transcript. Such vital information should not be given to one party alone, in a meeting from which concerned members of the public have been ejected. Yet this is precisely what has occurred here.

This Honorable Court could certainly be forgiven for doubting the ability of Judicial Watch and DOJ to effectively oversee the complicated business of implementing the Consent Judgment. When DOJ and SBE can't even manage to hold informational meetings without triggering major civil rights violations, something has gone badly awry. Participation of KDP in oversight will serve the public interest by eliminating these improper procedures.

Once again, public confidence will be shaken by SBE's current practice. One political party should not receive secret information in "private" meetings from which ordinary voters are excluded. Concerned citizens should not be ejected from meetings discussing list maintenance. These practices are not in keeping with Kentucky's laws and values, and betray the public trust. This sad state of affairs is exacerbated by SBE's inexplicable position that these private meetings need not be documented in any way and that no public record should be made available.

Clearly, KDP is the only party that is accurately informing this Court of the status of this litigation. This Court cannot monitor compliance with its orders in a vacuum. KDP is a key

party to aid the Court and to protect the citizens. For this reason, KDP's motion to intervene should be granted.

## II. Judicial Watch Raises no Cognizable Objections to KDP's Participation.

Judicial Watch expends great energy in attacking the motivations of KDP and even advances a conspiracy theory regarding the origin of a damning email showing that SBE reneged on a written agreement to simply "tag" inactive voters on the Master List. See: *Judicial Watch Opposition,* at pp.2-6. Judicial Watch asks that this Court be outraged by the use of this "*private May 2019 email*." Judicial Watch Opposition at p. 3, emphasis in original.

How an email between the DOJ and the SOS could possibly be considered "private" under any circumstances is not revealed by Judicial Watch. This Court should recognize the vapidity of this argument. Judicial Watch is not entitled to conduct the people's business in secret with no oversight from the voters themselves. Judicial Watch even attempts to claim that this vital public record should be concealed from this Court, the state courts, and the voting public. Id.

Any court would recognize that this email is a public record, required to be maintained under KRS 116.112(8), and freely available to any member of the public. The email is between the DOJ, Judicial Watch, the SOS and other parties. It discusses the plan to denote Kentucky voters as "inactive."

Judicial Watch next engages in a multi-page attack on the Kentucky Secretary of State for "actively supporting" KDP's allegations. *Judicial Watch Opposition*, at p. 4. Since the Franklin Circuit Court wholeheartedly agreed with KDP and the SOS, and entered a forceful Order protecting Kentucky voters, it is not clear what point Judicial Watch intends to make. It cannot

13

be suggesting that the state court's ruling is inappropriate, since Judicial Watch declined the opportunity to intervene and challenge the ruling of the state court.

KDP and the SOS have properly demanded that voters' rights be honored. That issue has clearly been settled in the emergency state court Order. The SOS simply affirmed that her office would not act under color of state law to deprive voters of their core Constitutional rights. SBE should have done the same. Judicial Watch's "argument" to the contrary is wasteful of this Court's time and evinces a lack of focus on relevant matters. This strongly suggests that Judicial Watch is ill suited to any continuing oversight role. Judicial Watch's objections to intervention should be taken for naught.

### III. DOJ Advances No Credible Objection to KDP's Participation

DOJ tells this Court that "KDP has now decided that it does not prefer the SBE's interpretation of state law" and urges the Court to ignore KDP's warnings. *DOJ Memo*, at p. 18. DOJ does not mention that the Franklin Circuit Court did not "prefer" SBE's unlawful actions either, and took sworn proof and entered an emergency Order to curtail SBE's unlawful actions. DOJ's slap at KDP is petty and inaccurate. The interpretation of state election law is no small matter, and DOJ's dismissive attitude toward what has already proven to be a major case of voter protection is unseemly. State courts are entitled to deference and respect in these matters.

Ultimately, it is this Court which has the greatest interest in seeing that its Consent Judgment is lawfully and effectively applied. All KDP asks is that it be permitted to assist in this process. Improvement is desperately needed, as the record in these actions reveal.

The state court entered an Order on 10/14/19 containing a Temporary Injunction. DOJ and Judicial Watch pretend that this marks the end of the state litigation, but as all practitioners know, a "temporary" injunction is emergency protection for the voters whose rights were denied

by SBE (and its "overseers" Judicial Watch and DOJ.) As shown herein, discovery and negotiations for an Agreed Order are continuing in the state court, which has proven to be an effective arbiter of voter protection laws.

### IV. THE MOTION IS TIMELY AND SHOULD BE GRANTED

Federal Rule of Civil Procedure 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who[] . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c).

"Good cause" is "a cause or reason sufficient in law." Webster's Third New Int'l Dictionary 978 (2002); see also Black's Law Dictionary 266 (10th ed. 2014) (defining "good cause" as "[a] legally sufficient reason"). Some courts have read this language to mean that "good cause" requires a showing of new evidence. *See U.S. ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995). Even with that heightened standard, KDP's motion is justified and timely filed.

The motion to intervene was timely in light of the undisclosed evidence that Judicial Watch and DOJ were not appropriately monitoring SBE or ensuring voter protections and compliance with law. Under such circumstances, this new information gives the Court good reason to permit the intervention. No prejudice will result from the addition of KDP as a party giving oversight to actions below, as KDP is simply joining in oversight, not compromising the existing Consent Judgment.

Five factors determine whether a motion to intervene is timely: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time

preceding the application during which the proposed intervenor knew or reasonably should have known of its interest in the case; (4) the prejudice to the original parties due to the intervenor's failure to apply promptly for intervention after it knew or reasonably should have known of its interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000).

KDP brought the motion to intervene as soon as the serious lack of oversight by Judicial Watch and DOJ became apparent. This motion is both timely and necessary. Intervention should be permitted.

## CONCLUSION

The actions of Judicial Watch, DOJ and SBE pose a clear and present danger to voter rights and public confidence in the fair and orderly administration of elections. To the extent this Court's Consent Order enforces such protections, KDP is clearly a necessary party to assist in oversight of these vital public matters. The current parties have proven themselves unable to ensure voter protection and public transparency. In the absence of KDP, no assurance of fairness and compliance with law has been had. For the foregoing reasons, this Court should grant the Motion to Intervene.

Respectfully submitted by:

/s/ Anna Stewart Whites /s/
ANNA STEWART WHITES
PIERCE WHITES
327 Logan Street
Frankfort, KY 40601
(502) 352-2373
Fax (502) 352-6860
Annawhites@aol.com
*COUNSEL FOR PLAINTIFF*

CERTIFICATE OF SERVICE:

A true and correct copy of this document was filed electronically with the Court and was hand-delivered upon the parties this the 6th day of November, 2019.

/s/ Anna Stewart Whites /s/
Attorney for Plaintiff