UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

No. 3:17-cv-00094-GFVT

| | |
|---|---|
| JUDICIAL WATCH, INC., <br> Plaintiff <br> v. <br> ALISON LUNDERGAN GRIMES *et al.*, <br> Defendants | **DEFENDANT STATE BOARD OF ELECTIONS' RESPONSE TO PLAINTIFFS' MOTIONS TO MODIFY AND ENFORCE CONSENT JUDGMENT** |

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

Defendant, Kentucky State Board of Elections ("SBE"), hereby responds to the Plaintiffs' Motions to Modify and Enforce Consent Judgement (Plaintiff Judicial Watch Motion is DE 45; Plaintiff Department of Justice Motion is DE 55; collectively these two motions are referred to herein as the "Motion"). In sum, the Plaintiffs' Motion seeks to rewrite the terms of the Consent Judgment to which they had previously agreed, SBE is opposed to this because it has complied and is complying with the expressed terms of the Consent Judgment (the "Judgment") [DE 39] and there is no reason to extend it beyond the terms as agreed to by the Parties (who are defined herein as Judicial Watch, Inc., United States Department of Justice, the SBE and the Kentucky Secretary of State's Office).

The SBE requested the United States Department of Justice ("DOJ") to intervene in the present action, albeit after being notified by DOJ in April 2018 that it had been authorized to seek enforcement of Section 8 of the National Voter Registration Act ("NVRA"). This request was premised on the fact as acknowledged and agreed to by the Parties that because of lack of funding for many years the SBE had been unable to conduct a general voter registration list maintenance

- 1 -

program to remove ineligible persons from the voter rolls due to a change in residence outside of the jurisdiction. DE 39, ¶¶ 28, 29. The Parties met at the undersigned's office in April 2018 and by early June 2018 the Parties reached a signed agreement resolving the issues in this action thereby saving significant resources on needless litigation and expediting the underlying issues in this matter in material and practical ways. But for the SBE's actions in leading the Parties to reach an agreement, all of 2018 and much of 2019 would likely have been spent in litigation and not solving the acknowledged problem. The SBE has repeatedly demonstrated its good faith in working with the other parties by participating in numerous meetings, telephone calls and emails keeping the lines of communications open and apprising the parties of what the SBE is doing and why.

As part of these communications, SBE stated that it would proceed cautiously and deliberately in addressing the voting rights of approximately 617,000 persons. It is important to note that of the 617,000 notices that were sent in June 2018, a total of 264,711 initial notices have been returned to the SBE office; and of these 264,711 notices, 109,955 were received by the SBE **after** August 8, 2018. Thus, approximately 40% of the total notices were received after August 8, 2018. *See* Affidavit of Tom Watson, SBE Senior Engineer, attached hereto as Exhibit 1.

When the SBE saw in July 2018 that the initial notices were being returned to the SBE at inconsistent rates, the SBE made clear to the Plaintiffs that sending the second notice in early August would create two groups of voters based only on the vagaries of when the SBE received these returned initial notice. As stated above, 154,756 of the notices that were received by the SBE came before August 8, 2018 – had the SBE sent the second notice to these voters, they would be subject to a significantly different timeline than the 109,955 voters whose notices were received on August 9 or later. Considering the delay of many years that existed prior to the present effort

of reviewing the roles, and the large number of voters being affected, the SBE took the reasonable step of avoiding the creation of disparate groups of voters and waited to treat all these persons similarly. This reasoning was expressed to the Plaintiffs in July, August, September and documented again in a letter dated October 11, 2018 to Plaintiffs' counsel. *See*, Exhibit 2, a copy of this letter.

The SBE's actions are in accord with the Judgment which requires that the SBE develop a statewide voter list maintenance program that makes a reasonable effort to remove those registered voters who have become ineligible due to change in residence from the statewide voter registration list. DE 39, ¶ 31. A central requirement of this program per the Judgment is that the "program shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act, 52 U.S.C. § 10301 et seq." DE 39, ¶31(a). The SBE's actions in creating a single set of voters who are all on the same timeframe – rather than two groups of voters – is a reasonable effort that is uniform and nondiscriminatory as well as being in accord with the Voting Rights Act, and the NVRA.

The Plaintiffs allege that the Judgment – which the Parties agreed to and jointly tendered to this Court – states that the second notice must have been sent to those eligible voters on or before August 8, 2018. The Plaintiffs repeatedly reference the language of ¶ 34 of the Judgment as authority for their position but fail to note that this paragraph is part of a larger portion of the Judgment dealing with the requirements of the as-yet developed Comprehensive Plan (the "Plan").

The Judgment was entered July 3, 2018, and as part of the Judgment, the SBE was to develop a Plan to "assist in the establishment of the general program described above [in the Consent Judgment.]" DE 39, ¶ 32. Under the terms of the Judgment, a draft of the Plan was due (and was provided) within 45 days of the effective date of the Judgment. The Parties have worked collaboratively and continue to revise the language of the Plan including the wording and timing

of the notices. However, the language in ¶ 34 specifically applies to a Plan – a document to be developed after implementation of the Judgment.

The Parties have worked together throughout this action in good faith, and if the Plaintiffs had demanded the timely performance of something, they had the ability to place that language in the Judgment. The SBE agrees that "Consent decrees and judgments are binding contracts." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998). However, the Judgment does not set a time period in which the second mailing would commence – instead it is left to the Plan to determine this at a future date. By failing to include a time frame when the second mailing must commence, the contractual terms of the Judgment make clear that time is not of the essence for this mailing. "Whether time is of the essence of the contract 'is viewed from the standpoint of the parties as gathered from the contract involved, under the rule that unless the intention to make time of the essence is evidenced by expression, or implication, it may not be so regarded.'" *Farmers Bank and Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 8 (Ky. 2005) (quoting *Distillery Rectifying & Wine Workers International Union of America v. Brown-Forman Distillers Corp.*, 213 S.W.2d 610, 612-13 (Ky. 1948)). "The mere fact that the contract contains a closing date does not imply that time is of the essence." *Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*, 2016 WL 3088267 at *5 (E.D. Ky. May 31, 2016) (citing *Davis v. Lacy*, 121 F.Supp. 246, 251 (E.D. Ky. 1954)).

Regarding the remainder of the Plaintiffs' Motion, the SBE joins to the extent they seek guidance from the Court on how to operate the inactive list. The SBE's approach to this issue is based on the understanding of KRS 116.112 which tracks the NVRA, *viz*.

> The State Board of Elections shall establish an inactive list of all voters who fail to respond to the notice described in subsection (3) of this section and do not vote or appear to vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office

that occurs after the date of the notice.

KRS 116.112(5)

As a result, the SBE's position on this issue is that after the second notice has been sent and the registrant has failed to respond, that person is placed on a list where they are monitored for two federal election periods. If that registrant fails to vote in a local, state or federal election during these two federal time periods (or take some other action to update their information with the county or state board of election) that person's registration as a Kentucky voter is to be removed. To be clear, a person who has their registration rescinded under these circumstances is entitled to re-register and become a voter in Kentucky simply by registering to vote.

WHEREFORE, the Kentucky State Board of Elections requests the Court to overrule the Plaintiffs' motion to extend the Consent Judgment for two more years.

Respectfully submitted,

*s/ Daniel Luke Morgan*
Daniel Luke Morgan
Stephen G. Amato
McBrayer PLLC
201 E. Main Street, Suite 900
Lexington, Kentucky 40507

Jennifer Scutchfield
Kentucky State Board of Elections
140 Walnut Street
Frankfort, KY 40601
O: 502-792-9499
Jennifer.Scutchfield@ky.gov
*Counsel for the SBE*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Court's ECF for distribution to counsel of record on November 18, 2019.

*s/ Daniel Luke Morgan*
Counsel for SBE

4820-9084-2285, v. 1