UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) | Civil No. 3:17-cv-00094-GFVT |
| Plaintiff-Intervenor, | ) ) ) | |
| v. | ) ) | |
| ALISON LUNDERGAN GRIMES, et al., | ) ) | |
| Defendants. | ) | |

**ALISON LUNDERGAN GRIMES' REPLY TO JUDICIAL WATCH'S AND THE UNITED STATES' RESPONSES IN OPPOSITION TO THE KENTUCKY DEMOCRATIC PARTY'S MOTION TO INTERVENE**

Defendant, Alison Lundergan Grimes, in her official capacity as the Secretary of State of the Commonwealth of Kentucky (the "Secretary of State") takes no position on the propriety of KDP's intervention in this lawsuit (DE 46) but responds to certain misstatements contained in the response briefs of Judicial Watch (DE 52) and the United States (DE 53).

**I.    The Secretary of State's Correct Interpretation of Kentucky's Election Laws Is Consistent With The Consent Judgment.**

Judicial Watch alleges in the "factual" recitations in its response to the KDP's motion to intervene that the Secretary of State's position in the KDP's lawsuit in Franklin Circuit Court (the "KDP Lawsuit") violates the Consent Judgment in this matter, and that the Secretary of State is secretly "colluding" with KDP in an unspecified and conspiratorial "coordinated, collateral attack on this Court's Consent Judgment." (*See* DE 52, at 2-6.) The United States similarly suggests that the Secretary of State's position "could result in a conflict with

requirements of the federal Consent Judgment." (DE 53, at 9.) To the contrary, the Secretary of State's *correct interpretation of Kentucky's election laws*, as confirmed by order of the Franklin Circuit Court, is consistent with the Consent Judgment, *which is premised upon the proper application of Kentucky's election law*. Judicial Watch and the United States—not the Secretary of State—take a position directly contrary to the express language of the Consent Judgment.

The United States and Judicial Watch agreed in the Consent Judgment that Kentucky law permits only those registrants who (1) do not respond to the confirmation notice mailing required by KRS 116.112(3) and Section 8(d)(2) of the National Voter Registration Act (the "Section 8(d)(2) Notice") *and* (2) do not vote or appear to vote for two federal election cycles, to be included on an inactive list. Specifically, Judicial Watch and the United agreed:

> As part of its list maintenance program, the Kentucky State Board of Elections is required by state law to maintain an inactive list. State law provides that when the State Board sends the notices described in KRS § 116.112(3) to registrants identified as having moved to a new county or state, *the registrants who do not respond to the notice and do not vote or appear to vote for two federal election cycles are maintained on an inactive list*. KRS § 116.112(5). When the State Board last sent such notices in 2009, those registrants who did not respond to the notice and did not vote or appear to vote for two federal election cycles were included on an inactive list and ultimately 67,743 individuals were removed from the registration list.

(*Id*., at ¶ 25) (citing KRS 116.112(5)) (emphasis added).

In the KDP Lawsuit, the Secretary of State contested the SBE's illegal removal of eligible voters from the voter rolls and the imposition of illegal barriers to vote that were contrary to KRS 116.112(5). The inactive list created and maintained by SBE at issue in the KDP lawsuit improperly included voters who had only received a Section 8(d)(2) Notice *but had not yet failed to vote in an election during the period between the date of the notice and ending on the day after the second general election for federal office.* As a result, SBE removed voters

2

who received Section 8(d)(2) Notices from the list of registered voters disseminated to the public and attempted to impose illegal barriers on their ability to vote. Because the Section 8(d)(2) Notices were mailed in June 2019, none of the voters on the SBE's "inactive list" could have possibly failed to appear to vote in two federal general elections as the next federal general election will take place in November 2020, then again in November 2022. Thus, the Secretary of State's position in the KDP Lawsuit was simply that the SBE must not maintain an inactive list or impose barriers to voting that violate KRS 116.112(5).

The United States moved to participate in the KDP Lawsuit as an amicus and, contrary to its agreement to Paragraph 25 of the Consent Judgment, argued *in favor of* the SBE's illegal removal of voters from the active registration list and imposition of barriers to voting. Judicial Watch appeared in court and stated that it also agreed with the SBE's illegal removal of voters and imposition of illegal voting barriers. In an order dated October 14, 2019, the Franklin Circuit Court agreed with the Secretary of State, ordering the SBE to return the Kentucky voters who received and have not responded to the Section 8(d)(2) Notice to active registration. (*See* DE 55-19, October 14, 2019 Order.)

The Secretary of State's correct interpretation of Kentucky law regarding the SBE's maintenance of an improper inactive list cannot give rise to a violation of the Consent Judgment. It is not a violation of the Consent Judgment to interpret the law correctly and oppose the illegal removal of voters from the active registration list and illegal barriers to voting.

Judicial Watch suggests the Secretary of State's invocation of a common interest privilege with KDP is evidence of "collusion" between the Secretary of State and the KDP. (*See* DE 52, at 4-6.) This is nonsense. Federal law is clear that invocations of privilege cannot create adverse inferences. *See, e.g., United States ex rel. Barko v. Halliburton Co.,* 241 F. Supp. 3d 37,

54 (D.D.C. 2017) (assertion of attorney client privilege cannot create adverse inference). Furthermore, Judicial Watch's statement that the Secretary of State's correct interpretation of Kentucky law "first appeared" in "private emails" from the Secretary of State's counsel is factually incorrect and misapprehends the Kentucky Open Records Act. First, the Secretary of State's correct interpretation of Kentucky law first appeared in the Consent Judgment, which recited the plain language of KRS 116.112(5) that prohibits the maintenance of an inactive list of voters who have not yet failed to appear to vote for two federal general elections *after* receiving the Section 8(d)(2) Notice. (*See* DE 39, at ¶ 25.) Second, the emails from counsel for the Secretary of State cited in Judicial Watch's brief are not "private emails;" the emails cited were sent to counsel for Judicial Watch and the United States, and are subject to public disclosure pursuant to Kentucky's Open Records Act. *See* KRS 61.870, *et seq*. Simply put, there is nothing nefarious about the Secretary of State correctly interpreting Kentucky law, as she is Constitutionally required to do for the protection of Kentucky voters.

**II.     The SBE Properly Engaged Outside Counsel To Respond To The United States' Intervening Complaint.**

The United States' brief in opposition to KDP's motion to intervene suggests that the Secretary of State was somehow responsible for prohibiting SBE staff from communicating with the Department of Justice beginning in July 2018, citing false allegations by Jared Dearing, the Executive Director of the SBE. (*See* DE 53, at 4-6.) In reality, staff for the SBE ceased communicating directly with the Department of Justice in July 2018 because the SBE *utilized outside counsel* at that time to respond to the United States' intervening complaint and to coordinate compliance with the recently agreed Consent Judgment. It is offensive that the United States would suggest that the SBE's decision to retain outside counsel amounts to improper interference with the United States' efforts to ensure compliance with the Consent Judgment.

4

There can be no adverse inference that results from the decision of SBE to utilize outside counsel and to enforce the ethical prohibition of direct contact by opposing counsel with a represented client.

Respectfully submitted,

/s/ Daniel J. O'Gara
R. Kenyon Meyer
Daniel J. O'Gara
Dinsmore & Shohl, LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
(502) 540-2300 (phone)
(502) 585-2207 (fax)
kenyon.meyer@dinsmore.com
daniel.ogara@dinsmore.com
*Counsel for Defendant Alison Lundergan Grimes, in her official capacity as Chief Elections Official*

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

/s/ Daniel J. O'Gara
*Counsel for Defendant Alison Lundergan Grimes, in her official capacity as Chief Elections Official*