**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT**

JUDICIAL WATCH, INC.,

    Plaintiff,

UNITED STATES OF AMERICA,

    Plaintiff–Intervenor,

v.

ALISON LUNDERGAN GRIMES, et al.,

    Defendants.

Civil No. 3:17-cv-00094-GFVT

**PLAINTIFF JUDICIAL WATCH'S REPLY IN FURTHER
SUPPORT OF ITS MOTION TO MODIFY AND ENFORCE
THE CONSENT JUDGMENT, AND ITS REQUEST
<u>FOR A HEARING PURSUANT TO LOCAL RULE 7.1(f)</u>**

Plaintiff Judicial Watch, Inc. hereby submits this reply memorandum of law in further support of its Motion to Modify and Enforce the Consent Judgment (ECF 45) (the "Motion"); and as its request, pursuant to LR 7.1(f), for a hearing.

**ARGUMENT**

I. **There is No Jurisdictional Bar That Would Prevent the Court from Enforcing Its Consent Judgment.**

Secretary Grimes argues that Judicial Watch's motion is a "request for an advisory opinion on hypothetical legal issues that are not ripe for decision under any circumstances." ECF 57 at 2. According to Secretary Grimes, "[i]n 2023, if Judicial Watch and the United States feel that the SBE has not 'substantially complied' with the Consent Judgment, the Court could hold the requisite evidentiary hearing and make the findings of fact at that time." *Id.* at 2-3. Any evaluation of compliance prior to that time is "premature." *Id.* at 3.

This argument badly confuses the relevant legal concepts. The doctrines of ripeness and advisory opinions address whether federal courts can assert Article III jurisdiction over particular claims. This motion, however, concerns this Court's inherent power to enforce its own orders. A "district court's subject matter jurisdiction" to enforce its own consent decrees "is well established." *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 532 (6th Cir. 2012). A "consent decree is a 'settlement agreement subject to continued judicial policing.'" *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) (citation omitted); *see Waste Mgmt. of Ohio v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997) (courts "have a duty to enforce . . . their consent decrees as required by circumstance"). Accordingly, "it is well-settled that 'courts retain the *inherent* power to enforce agreements entered into in settlement of litigation pending before them.'" *Vanguards*, 23 F. 3d at 1018 (citations omitted) (emphasis added). The Sixth Circuit noted just a few months ago that "[w]e have emphasized that the district court's inherent power" to

1

enforce its consent decrees "is 'broad,' and '[t]he court's choice of remedies is reviewed for an abuse of discretion.'" *U.S. v. Bd. of Cnty. Comm'rs of Hamilton Cnty., Oh.*, 937 F.3d 679, 688 (6th Cir. 2019), quoting *Shy*, 701 F.3d at 533.

Aside from the Court's broad, inherent powers, the Consent Judgment explicitly provides that "[u]ntil the termination of this Agreed Order, the Court shall retain jurisdiction over this action to enter such further relief as may be necessary for the effectuation of" its terms. ECF 39, ¶ 42 (page 17). It also provides that it will terminate on October 31, 2023 "unless . . . the Court determines that the Defendants have not achieved substantial compliance with its terms." *Id.*, ¶ 41 (page 17). It does *not* restrict when Plaintiffs can move to extend its termination date.

Secretary Grimes' arguments are misguided. Whether the breaches described by Plaintiffs would be "ripe" so as to support Article III jurisdiction if they were *new* claims is irrelevant here. Judicial Watch did not file a new complaint alleging jurisdiction on the basis of new claims. It filed instead a motion to enforce the Court's *existing* consent order. The Court clearly has both the inherent power and the consent of the parties under the explicit terms of the Consent Judgment to address the issues raised by Plaintiffs and to grant the relief they request.

In any event, notwithstanding that Plaintiffs do not need to make this showing, they clearly have identified present and imminent harm that is ripe for adjudication. Defendants' failure to send address confirmation notices prior to the 2018 elections means that more than one hundred fifty thousand registrations belonging to voters who probably have moved elsewhere will now be carried on Kentucky's voter rolls for an additional *two years*.[1] Defendants' misinterpretation of statutes regarding inactive registrations is an obstacle to completing a Comprehensive Plan and to establishing procedures to implement it. Kentucky's voter lists become less accurate every time

---

[1] *See* discussion *infra*, Part II.

Defendants fail to process the registration of a voter who did not return an address confirmation card. All of Defendants' failures impair the accuracy and currency of Kentucky's voter rolls, the improvement of which was the only reason Plaintiffs ever agreed to the Consent Judgment.

## II. Defendants Violated the Consent Judgment by Failing to Send More Than 150,000 Address Confirmation Notices They Had to Send On Or Before August 8, 2018.

As Judicial Watch explained in its Motion, the Consent Judgment required two mailings: an initial, nonforwardable, canvass mailing to identify those who may have moved, and a second, forwardable mailing that complies with Section 8(d)(2) of the NVRA. ECF 45 at 6; ECF 39, ¶ 34 (pages 11-12). The Consent Judgment required Defendants to set forth in any compliance plan "[t]he expected date(s) between May 23 and August 8, 2018 when [confirmation notices] will be sent under . . . 8(d)(2) of the NVRA." ECF 39, ¶ 34(e) (page 12). Defendants' counsel admitted last year that the second mailing had not been sent on or before August 8, 2018, and said that the failure to do so was a deliberate choice by Defendants. ECF 45-6 at 1-2 (pages 2-3).

In its opposition to the Motion, Defendant SBE has quantified the number of registrations affected by Defendants' failure to send a second mailing in the specified time. Of 264,711 cards returned as undeliverable after the initial canvass mailing, Defendant SBE reports that 154,756 were returned prior to August 8, 2018. ECF 56 at 2; ECF 56-1, ¶¶ 5-6. These cards should have been followed up before that date with a second, forwardable NVRA mailing, but Defendants unilaterally chose not to do so. ECF 56 at 2. Had Defendants complied with this duty, then the registrations belonging to those who have moved elsewhere (most likely the vast majority of those returned as undeliverable) could have been cancelled after the November 2020 elections. As it stands, Defendants' failure to send such a mailing means that up to 154,756 outdated registrations will now remain on Kentucky's voter rolls through at least November 2022.

3

Both Defendants argue that the Consent Judgment did not require them to send follow-up NVRA address confirmation notices by August 8, 2018. Their arguments are at odds with the plain language of the Consent Judgment.

Defendant SBE notes that the date references to August 8, 2018 in the Consent Judgment are contained in ¶ 34, which concerns the contents of a Comprehensive Plan that the parties were to develop and negotiate at a later date. ECF 56 at 3. Defendant SBE seems to conclude from this that the August dates were not binding because the parties had not agreed upon a Comprehensive Plan by that time. *Id.* at 3-4. This argument simply ignores the last sentence of ¶ 33, which states: "The Kentucky State Board of Elections will proceed with the actions described in subparagraph 34(c) below regarding a canvass mailing in the stated timeframes *regardless of whether a Comprehensive Plan is in place*." ECF 39, ¶ 33 (page 9) (emphasis added). Paragraph 34(c), in turn, specifies that both the initial canvass mailing and the NVRA address confirmation mailing are to take place by August 8, 2018. ECF 39, ¶ 34(c) (page 11). Thus, it does not matter when (or even whether) a Comprehensive Plan is finally agreed to by the parties.

Secretary Grimes acknowledges the proviso in ¶ 33, but then seeks to restrict its application. She emphasizes that ¶ 33 specifically refers to "the actions described in subparagraph 34(c) below *regarding a canvass mailing* in the stated timeframes." ECF 39, ¶ 33 (page 9) (emphasis added). From this she concludes that, in the absence of a final Comprehensive Plan, the Consent Judgment only requires Defendants to conduct the initial, canvass mailing by August 8, 2018, but does not require the second, NVRA mailing by that date. ECF 57 at 16.

Like the SBE, Secretary Grimes simply ignores clauses in the Consent Judgment that contradict her interpretation. Paragraph 33 cross-refers to ¶ 34(c), which is one of a number of

4

provisions that *must* be included in any Comprehensive Plan. Paragraph 34(c) provides, in its entirety, as follows:

> 34. . . . At a minimum, the Comprehensive Plan shall include the following:
> . . .
> (c) **Canvass Mailing**. Procedures for sending a nonforwardable canvass mailing to identify registrants through mail returned as undeliverable who may have unreported moves since 2009, excluding any already identified through the Kentucky State Board of Elections' initial use of the information listed in subparagraph (b), including the expected date(s) between May 23 and August 8, 2018, on which the canvass mailing will be sent. *Where such nonforwardable canvass mailing is returned as undeliverable with or without forwarding address, this would include procedures for moving ahead during the time period between May 23 and August 8, 2018 as set forth in subparagraphs (d)(i), d(ii), and (e) below.*

ECF 39, ¶ 34(c) (page 11) (emphasis added). Paragraph 34(e), which is referred to at the end of the cited paragraph, provides in turn that the Comprehensive Plan must include "[t]he expected date(s) between May 23 and August 8, 2018 when notices will be sent under . . . 8(d)(2) of the NVRA." ECF 39, ¶ 34(e) (page 12).

Simply put, ¶ 34(c) plainly states that the "[p]rocedures for sending a nonforwardable canvass mailing" are to be understood to "include procedures for moving ahead between May 23 and August 8, 2018" with the second mailing pursuant to the NVRA. This fact is fatal to Secretary Grimes' argument. It means that, when ¶ 33 states that the SBE "will proceed with the actions described in subparagraph 34(c) below regarding a canvass mailing in the stated timeframes," it is referring both to the initial canvass mailing and to the second, NVRA-related mailing. Stated differently, the phrase "Canvass Mailing"—the heading of ¶ 34(c)—is effectively a defined term that refers to both of the mailings in that paragraph. This interpretation is confirmed by the use of plural nouns in ¶ 33, which refers to "the action<u>s</u>" and "timeframe<u>s</u>" in ¶ 34(c). These plurals indicate that ¶ 33 is referring both to the initial canvass mailing and to the forwardable NVRA mailing described in ¶ 34(c).

5

Note also that Defendants' arguments make no sense given the timing of the events in the Consent Judgment. The Consent Judgment was issued by this Court on July 3, 2018. The first draft of the Comprehensive Plan was due 45 days later (ECF 39, ¶ 33), or on August 17, 2018. This is nine days *after* the August 8 deadline. If the deadlines in ¶¶ 34(c) and (e) only apply to an NVRA mailing once a Comprehensive Plan is finalized, it would be pointless for these paragraphs to mention August 8, 2018 at all, because the first draft of the Comprehensive Plan would only be due after that date.[2] Agreements should not be read in a way that renders particular terms meaningless. *See Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 887 (E.D. Ky. 2014), *aff'd*, 830 F.3d 444 (6th Cir. 2016) ("an interpretation of the contract that 'gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable . . . or of no effect'") (citations omitted).[3]

As a final point, it is fundamental that in interpreting a contract "the Court must read the various provisions of the contract as a whole." *Id.* (citations omitted). Given the context provided by the other terms of the Consent Judgment, it is abundantly clear that it required Defendants to send NVRA address confirmation notices on or before August 8, 2018. As the Consent Judgment noted, by June 2018 Defendants had failed to comply with the NVRA for many years. ECF 39, ¶¶ 28-29 (page 7). The Consent Judgment contained measures designed to enhance compliance in both the long and the short terms. The long-term goal was to draft, negotiate, and implement a

---

[2] As a practical matter (and as experience in this case confirms) the fact that any proposed Comprehensive Plan would then have to be negotiated and agreed to by the parties and reviewed and ordered by the Court means that a plan would not become final until long after August 2018.

[3] Note too that Plaintiffs would never have agreed to make the August 8, 2018 deadline for NVRA address confirmation mailings in any way contingent on the existence of a final Comprehensive Plan. This would have given Defendants the unilateral power to abrogate a major provision of the Consent Judgment simply by prolonging negotiations concerning that Plan.

reasonable list-maintenance program, embodied in a Comprehensive Plan, to ensure lasting compliance with the NVRA. ECF 39, ¶¶ 9-33 (pages 3-9). The short-term measures included canvass and NVRA mailings in advance of November 2018 to "start the clock" so that outdated registrations could be removed after the next two general federal elections. ECF 39, ¶¶ 33-35 (pages 9-16). Any near-term decrease in ineligible registrations obviously depended on sending *both* mailings prior to November 2018. Because Defendants did not send the federally required second mailing before the deadline, the NVRA "clock" was set back by two full years.

Defendant SBE argues in the alternative that the Consent Judgment does not indicate that "time is of the essence" regarding the second, forwardable mailing pursuant to NVRA Section 8(d)(2). ECF 56 at 4, citing, *inter alia*, *Farmers Bank and Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4 (Ky. 2005). Although the SBE does not expressly say so, it seems to be arguing that, while there *was* a breach of the Consent Judgment in failing to send the second mailing before August 8, 2018, it was not a substantial or material breach. *Cf. id.* at 8 (where time is of the essence, "altering this date would be a material change in the contract necessitating compliance with the statute of frauds"); *Fed. Materials Co. v. Paducah Bank & Trust Co.*, Nos. 87-CA-1405-MR, 87-CA-1440-MR, 1989 Ky. App. LEXIS 6, at *11 (Ky. Ct. App. Jan. 20, 1989) ("If time is of the essence to an agreement, and one party fails to perform at the time specified" it is a substantial or material breach justifying rescission) (citation omitted).

Defendant SBE is wrong to suggest that failing to send the second mailing before August 8, 2018 was not a substantial or material breach. "[T]he intention to make time of the essence" may be "evidenced by expression, *or implication*." *Farmers Bank*, 171 S.W.3d at 8 (citation omitted) (emphasis added). The Consent Judgment clearly indicates that sending the NVRA Section 8(d)(2) mailing on time was a material requirement. The deadline of August 8, 2018 was

mentioned in regard to the NVRA mailing in two different paragraphs. ECF 39, ¶¶ 34(c), 34(e) (pages 11, 12). Both paragraphs appear in a section devoted to describing provisions that are mandatory in any Comprehensive Plan agreed to by the parties. ECF 39, ¶ 34 (page 9) ("At a minimum, the Comprehensive Plan shall include the following:"). The entire Consent Judgment, moreover, is intended to enforce the NVRA, which uses general federal elections as the "counters" for a statutory waiting period that must elapse before a specific kind of registration is cancelled. 52 U.S.C. § 20507(d)(1)(B). That statutory waiting period is referred to in the Consent Judgment in five different paragraphs. ECF 39, ¶¶ 17, 24, 31(e), 34(d)(ii), 34(g). The Section 8(d)(2) notice that commences the statutory waiting period is referred to in ten different paragraphs. ECF 39, ¶¶ 17, 31(e), 34(d)(ii), 34(e), 34(g), 35(c)(vi)-(ix). Indeed, the primary means by which the Consent Judgment seeks to enforce the NVRA is by sending address confirmation notices that start the statutory waiting period encompassing two general federal elections. Choosing not to send confirmation notices prior to a general federal election—one of the NVRA's crucial counters—and thereby delaying the removal of up to 150,000 registrations for two additional years is clearly a substantial breach of the Consent Judgment.

Because Defendants' deliberate failure to send a second mailing pursuant to Section 8(d)(2) is a substantial breach of the Consent Judgment, it does not matter whether Defendants felt they had cause for their delay. The Consent Judgment does not refer to any acceptable cause for delaying a Section 8(d)(2) mailing. *Nor, for that matter, does the NVRA itself.* Defendants *always* had a duty under the NVRA to send address confirmation notices to registrants who may have moved. Defendants violated both the Consent Judgment and federal law when they failed to send address confirmation notices to the registrants they had identified through the canvass mailing.

8

In any case, the particular reasons Defendants give for failing to conduct the second mailing are plainly inadequate. Defendants argue that it would have been somehow inequitable to "create two groups of voters based only on the vagaries of when the SBE received" the returned notices from the initial canvass mailing. ECF 56 at 2; *see* ECF 57 at 9. Secretary Grimes adds that this outcome would not have been "uniform and nondiscriminatory." ECF 57 at 17.[4] But, as Judicial Watch pointed out in its Motion, Congress specified mailing as the basis for checking voters' addresses under the NVRA. The "vagaries" of the mail (and, to be fair, the "vagaries" of when and whether recipients choose to respond to their mail) cannot be considered to establish legal inequity. As Judicial Watch explained, if this were true, the NVRA itself would have to be rejected as invalid. *See* ECF 45 at 15. Voters with slow mail service are not a protected class. Defendant SBE cites "the delay of many years that existed prior to the present effort" as a reason for waiting to send notices. ECF 56 at 2. Defendants' long-standing failure to comply with federal law would seem to counsel greater urgency, not less. Finally, Secretary Grimes cites a July 31, 2018 call from Defendants' counsel to the United States, in which it was first revealed that Defendants would not meet the August 8 mailing deadline, to suggest that the United States acquiesced in that decision. ECF 57 at 8.[5] Judicial Watch was not part of that call and never acquiesced to the delay. None of the foregoing justifies ignoring the requirements of the Consent Judgment or of federal law.

---

[4] These equitable factors were *not* the reasons given by Defendants in July 2018 for failing to conduct a second mailing. Instead, they cited "staff constraints." ECF 55 at 8; ECF 55-1, ¶ 17.

[5] The United States denies that it acquiesced. The United States received a favorable progress report just two weeks before that call, and after the call there was little it could do to fix the situation, as there were just days left before the deadline. ECF 55 at 8-9; ECF 55-1, ¶¶ 16-17.

**III.	Because Defendants' Interpretation of KY. REV. STAT. § 116.112(5) and Its Relation to 52 U.S.C. § 20507(d) Is Still Unclear, the Court Should Issue a Clarification.**

In its Motion, Judicial Watch identified a new interpretation of KY. REV. STAT. § 116.112(5) first suggested by Defendants earlier this year. That statute provides that the SBE shall create "an inactive list of all voters who fail to respond" to a confirmation notice "and do not vote or appear to vote" in the next two general federal elections. *Id.* On its face, the statute is unremarkable and is similar to other state laws designed to comply with the NVRA.

In May 2019, Defendants' counsel suggested a novel interpretation of § 116.112(5), under which the stated conditions (not responding to a confirmation notice and not appearing to vote for two elections) were viewed as <u>pre</u>conditions, which had to occur before a voter was placed on Kentucky's inactive list. Under this view, a period of from two to four years had to elapse *before* a registration was designated as "inactive." This was a dramatic change from counsel's position in October 2018, when he indicated that a period of 45 days following the sending of a notice would warrant being placed on the inactive list. ECF 45-6 at 7 (page 8 of document).

This interpretation matters because it could affect how Defendants implement the Consent Judgment. In its Motion, Judicial Watch identified the different ways the interpretation might work, and effectively invited Defendants to choose among them. There are three important issues Defendants must make clear:

(1)	Do Defendants believe that *four* general federal elections must occur after a Section 8(d)(2) notice is sent and not responded to (during which time the registrant does not appear to vote or correct the registrar's record) before a registration can be cancelled—two elections before being placed on the inactive list, and two more before cancellation? As Judicial Watch explained, this interpretation is contrary to the plain language of the NVRA as interpreted by the Supreme

Court, and, if implemented, would destroy the value of the Consent Judgment. ECF 45 at 17-18; *see Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).

(2) Do Defendants believe that *two* general federal elections must occur after a Section 8(d)(2) notice is sent and not responded to (without contact from the registrant) before a registration can be cancelled—at which point the registration is, more or less simultaneously, also placed on Kentucky's inactive list? This interpretation is at least consistent with the NVRA, and seems to be the only viable alternative to proposition 1.

(3) Do Defendants believe that, after a registrant has been sent a notice and failed to respond to it, but before two general federal elections have occurred, an affirmation or confirmation of the registrant's address must occur before that registrant is permitted to vote? Such an affirmation is required by 52 U.S.C. § 20507(d)(2)(A) and (e)(3). Yet it is unclear whether Defendants' interpretation of Kentucky law allows for this procedure.

The SBE indicates that it accepts proposition 2. ECF 56 at 5. The SBE has taken no position, however, on proposition 3. The SBE joins Judicial Watch's request for clarification "to the extent" we "seek guidance from the Court on how to operate the inactive list." *Id.* at 4.

Secretary Grimes' position, however, is ambiguous, if not downright contradictory. On the one hand, she plainly states that she "***agrees*** that . . . an individual who received a Section 8(d)(2) Notice ***and*** fails to vote or appear to vote in two federal elections is subject to removal from the voter registration list." ECF 57 at 18. Thus, Secretary Grimes affirms proposition 2. Yet elsewhere Secretary Grimes states that she "has never stated a position . . . on whether voters who receive a Section 8(d)(2) Notice and who do not thereafter vote or appear to vote for two federal general elections are subject to immediate removal by the SBE." *Id.* at 3. And later she confirms that she believes that this is *incorrect*: "Judicial Watch asks the Court to order that a voter registration be

11

'immediately cancelled' after a Section 8(d)(2) Notice is not responded to and two consecutive general federal elections have taken place without voter activity. . . . No legal authority permits the amendment of the Consent Judgment to include this language." *Id*. at 20. These statements seem to reject proposition 2. Secretary Grimes also takes no position on proposition 3.

Because Defendants' positions regarding these crucial matters of interpretation are still unclear, the clarifications sought by Judicial Watch in its Proposed Order (ECF 45-14) should be issued.

## IV. Defendants' Statements About How They Process Registrations When Notices Are Not Returned Are Not Hearsay.

In its Motion, Judicial Watch alleged that counsel for Defendant SBE stated that Secretary Grimes directed that address confirmation notices that are sent to voters and simply never returned are not processed further. ECF 45-1, ¶ 4. This treatment contrasts with that given to address confirmation notices that are returned as "undeliverable," which are properly processed. *Id.*, ¶ 5.

Defendant SBE says nothing about these allegations in its opposition brief and must be presumed to concede that they are true.

Secretary Grimes denies these allegations in her opposition brief (although not in any sworn statement). ECF 57 at 22. She also argues that the statements of Defendants' counsel are inadmissible hearsay. *Id.*

These statements are not hearsay. Secretary Grimes' statements were made by an opposing party. Ms. Scutchfield's statements were made by the representative agent of an opposing party. Ms. Scutchfield's statements are also statements in which the SBE has manifested its belief. Thus, both Secretary Grimes' statements, and Ms. Scutchfield's report of those statements, are non-hearsay admissions under Fed. R. Evid. 801(d)(2)(A) and (B).

Further, Ms. Scutchfield's statements are not hearsay to the extent that they are offered solely to show *what the SBE believed to be* the procedures used, imposed, or preferred by Secretary Grimes. When used for this purpose, the statements are not being offered for their truth, and so are not hearsay. *See* Fed. R. Evid. 801(c)(2).

In any case, direct testimony on these matters can be taken at the hearing on this Motion.

## V. Plaintiff Judicial Watch Requests a Hearing Pursuant to Local Rule 7.1(f).

Judicial Watch respectfully requests a hearing pursuant to LR 7.1(f). The Court is not required to hold "a full-blown evidentiary hearing" prior to amending the Consent Judgment if sufficient evidence is submitted and is adequately considered. *Gonzales v. Galvin*, 151 F.3d 526, 535 (6th Cir. 1998). However, Judicial Watch respectfully submits that a hearing should be ordered in this case because it would be useful to elicit testimony and, frankly, to clarify Defendants' positions, regarding the following issues, among others: (1) When the decision was made not to conduct a second mailing, and why was it made, and whether it had to do with "staff constraints"; (2) Defendants' views regarding the meaning of KY. REV. STAT. § 116.112(5) and how it interacts with 52 U.S.C. § 20507(d); (3) Secretary Grimes' directions regarding the processing of registrations where an address confirmation notice was not responded to; and (4) Secretary Grimes' directions regarding staff communications and cooperation with counsel for Plaintiffs.

Once the Court establishes a date for a hearing Judicial Watch will issue appropriate subpoenas to secure witness testimony.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Judicial Watch respectfully requests that this Court enter the Proposed Order to enforce the Consent Judgment and to amend it to extend its duration to March 31, 2025; direct that a hearing be held on this motion, pursuant to LR 7.1(f); and grant such other and further relief as this Court deems necessary.

December 4, 2019                                   Respectfully submitted,

*/s/Robert D. Popper*
Robert D. Popper*
T. Russell Nobile**
Eric Lee*
JUDICIAL WATCH, INC.
425 Third Street, S.W.
Washington, D.C. 20024
rpopper@judicialwatch.org
(202) 646-5172
(202) 646-5199 (fax)

H. Christopher Coates*
Law Office of H. Christopher Coates
934 Compass Point
Charleston, South Carolina 29412
(843) 609-7080 (phone)
curriecoates@gmail.com

Mark A. Wohlander
WOHLANDER LAW OFFICE, PSC
P.O. Box 910483
Lexington, Kentucky 40591
(859) 309-1691 (office)
(859) 361-5604 (mobile)
(859) 309-1698 (fax)
mark@wohlanderlaw.com

Counsel for Plaintiff

*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice Motion Pending*

# CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

>*/s/ Robert Popper*
>*Counsel for Plaintiff*
>*Judicial Watch Inc.*