## STATEMENT OF EMERGENCY

## 31 KAR 4:191E

This emergency administrative regulation is necessary given that the Kentucky Constitution requires free and fair elections, yet the COVID-19 pandemic has created a state of emergency in the Commonwealth and poses a risk to the health and well-being of voters.  See, Governor's Executive Orders 2020-215 and 2020-296. This emergency regulation will allow the Commonwealth to conduct primary, special, and local option elections on June 23, 2020 in a manner that reduces the amount of exposure voters, poll workers, and administrators have to possible infection, thereby helping state and federal efforts to slow and stop the spread of the novel coronavirus. This emergency administrative regulation is promulgated pursuant to KRS 13A.190(a)(1) and (4), as well as to be consistent with the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. 20101 et seq.  Pursuant to KRS 13A.190(1)(b)(1), this emergency regulation is temporary in nature and will expire as provided in this section. To take effect, it must be ratified by the Governor and Secretary of State through respective executive orders. This emergency administrative regulation will not be replaced by an ordinary administrative regulation.

_____
_____
ANDY BEASHEAR                                         JARED DEARING
Governor                                                            Director, State Board of Elections

**STATE BOARD OF ELECTIONS**

**(New Emergency Administrative Regulation)**

**31 KAR 4:191E. Procedures for June 23, 2020 Elections.**

RELATES TO: KRS Chapters 39A and 117

STATUTORY AUTHORITY: KRS 39A.100(1)(l)

NECESSITY, FUNCTION, AND CONFORMITY: KRS 39A.100(1)(l) requires the State Board of Elections to establish procedures for election officials to follow when the Governor has declared a state of emergency and the Secretary of State has recommended to the Governor, and the Governor has agreed, that a different time, place, or manner for holding elections is necessary. This emergency administrative regulation outlines the procedures to be undertaken to effectively conduct the June 23, 2020 elections. The following temporary emergency regulations relate to the procedures by which a lawful, registered Kentucky voter may cast a ballot for the elections to be held June 23, 2020.

Section 1. All provisions outlined in this emergency administrative regulation shall apply to the Commonwealth's June 23, 2020 elections only. Any existing administrative regulation promulgated by the State Board of Elections that conflicts with any provision herein is suspended in pertinent part as applied to the June 23, 2020 elections, including but not limited to the first two sentences of 31 KAR 4:160, section 7, subsection 4(c). Any existing statute that directly conflicts with Governor's Executive Order 2020-296, inclusive of the Secretary of State's recommendations as incorporated

therein, is deemed suspended in pertinent part, by the authority of the General Assembly consistent with Section 15 of the Kentucky Constitution, as applied to the June 23, 2020 elections. However, no regulation or statute is or shall be deemed as suspended, in whole or in part, unless it directly conflicts with Governor's Executive Order 2020-296, the Secretary of State's recommendations as incorporated therein, or the provisions herein.

Section 2. Definitions. All terms used herein shall have the same definitions as currently stated in the Kentucky Revised Statutes and Kentucky Administrative Regulations. However, the term "medical emergency," established by but undefined in KRS 117.077, is defined to include a reasonable fear of infection or transmission during a state of public health emergency declared by the Governor.

Section 3. Notwithstanding KRS 117.077, an application for an absentee ballot due to medical emergency:

(1) Shall not require the applicant to state that the emergency condition occurred within 14 days of the election;

(2) Need not be notarized, and

(3) Shall entitle the applicant, upon verification of the application, to vote by absentee, by mail or in person by appointment, as advised, if otherwise a lawful voter.

Section 4. The State Board of Elections shall send a non-forwarding postcard to every registered voter of the Commonwealth to inform them of the changes being made to the June 23, 2020 elections as a result of the COVID-19 pandemic, as well as the steps the voter must take to request an absentee ballot through the SBE secure online portal or by calling their County Clerk. The postcard shall advise voters that, if they will

1   vote in-person absentee or in person on election day, they are advised to make an

2   appointment with their County Clerk. The postcard shall have a return address of the

3   State Board of Elections, and any postcard returned as undeliverable, or with a

4   forwarding address, will be tracked and the process for list maintenance established in

5   KRS 116.112 shall be followed. All UACOVA and overseas voting will take place as

6   prescribed by federal law; these voters will receive a notification postcard.

7   Section 5.  The State Board of Elections shall establish a secure online portal

8   that will allow voters to request an absentee ballot through the submission of personally

9   identifiable information.  The information given by the voter on the portal shall serve as

10  an absentee application in lieu of SBE's "Medical Emergency Application to Vote

11  Absentee" form.  The secure online portal shall transmit the request to the County Clerk

12  of the county in which the requester is registered to vote.  The County Clerk shall

13  transmit to the voter an absentee ballot within seven (7) days, but no later than June 16,

14  2020.  The County Clerk shall be responsible for determining if the request is valid.  The

15  State Board of Elections shall deliver to County Clerks a unique barcode for each

16  voter's ballot envelope, providing the ability to track the ballot as it mailed out and

17  received back, in order to certify the movement of the ballot through the postal system

18  and to issue voter credit.  Notwithstanding the availability of the secure online portal, a

19  registered voter may request an absentee ballot using a traditional method of request.

20  Section 6.  A voter shall request a mailed absentee ballot from the County Clerk

21  of that voter's residence by 11:59 p.m. EST June 15, 2020.  All mail-in absentee ballots

22  shall have the return postage paid for by the State Board of Elections.  Any voters who

23  fail to do so, but desire to vote, shall be advised to contact their County Clerk in order to

obtain an absentee ballot or to make an appointment to vote in-person absentee or in person on election day. Absentee ballots must be received by the County Clerk of the voter's county of registration no later than 6:00 p.m., local time, on June 23, 2020, in order to be counted, except that, absentee ballots delivered by the United States Postal Service and bearing a postmark of June 23, 2020 or an earlier date, shall be counted if received by 6:00 p.m., June 27, 2020.

Section 7. Any ballot containing the postponed election-day date of May 19, 2020 shall be deemed valid as to the June 23, 2020 elections. A voter may deliver an absentee ballot to the office of the County Clerk in the county where the voter is registered, rather than mailing the ballot via the United States Postal Service. To assist County Clerks in managing the flow of receipt of voter-delivered absentee ballots, the State Board of Elections may purchase secure drop-boxes and provide them to County Clerks based on request and availability. Each drop-box must be secured inside a main or satellite office of a County Clerk, or otherwise inside a county courthouse, and must at all times be visible by County Clerk staff. Each County Clerk utilizing one or more drop-boxes shall empty each drop-box at least once each business day of the County Clerk's Office, and secure the absentee ballots therein in a manner consistent with KRS 117.086(6); however, County Clerks shall empty drop-boxes more frequently than daily as needed so as to reasonably accommodate the volume of voter-delivered absentee ballots.

Section 8. On or before June 1, 2020, each County Board of Elections shall appoint an absentee ballot processing committee with a minimum of four (4) members, all of whom must be registered voters of that county. Each committee shall have at

minimum, one (1) registered Democrat and one (1) registered Republican. One political party shall not comprise a majority of a committee unless the role of the committee is assumed by the local County Board of Elections. Each County Board of Elections shall establish, and present to the State Board of Elections for approval, a process for observation of absentee ballot processing and counting, to be conducted in a manner consistent with Centers for Disease Control guidance. This absentee ballot processing committee may meet every day, subject to the needs and requirements of ballot processing, beginning as early as June 1, 2020, to review the absentee ballots cast in the county, but no person shall record or publicize any tallies or counts of these ballots until 6:00 p.m. local time, June 23, 2020. Once processed, absentee ballots must be stored in a manner consistent with current statutes and practices.

Section 9. No absentee ballot may be processed and counted unless and until the absentee ballot processing committee verifies the signature on the absentee ballot envelope to match the voter's signature of record. If a signature match cannot be made, the County Board of Elections, absentee ballot processing committee, or the County Clerk shall make a reasonable effort to contact the voter using the contact information provided by the voter's absentee ballot application, and provide the voter with a timeframe and manner in which the voter may cure the discrepancy. All signature cures must be made by 4:30 p.m., local time, June 29, 2020.

Section 10. All County Clerks shall make their offices and telephone lines available for the purpose of allowing registered voters of their respective counties to schedule appointments to vote absentee in-person by appointment beginning no later than June 8, 2020 and ending June 22, 2020, no fewer than 5 days per week in the two

weeks before the week of election day. County Clerks shall make reasonable efforts to accommodate in-person appointments according to the needs and availability of both the requesting voter as well as the Clerk's office. Appointments shall be consistent with public health and social-distancing standards and every reasonable effort shall be undertaken by County Clerks to see that in-person absentee voting is implemented in a manner that limits direct contact between voters, other voters, and election officials, and shall be conducted throughout the Clerk's business hours. Once in-person absentee voting has concluded on June 22, 2020, the cumulative results shall be tabulated by the absentee ballot processing committee or County Board of Elections.

Section 11. Notwithstanding any statute or regulation to the contrary, County Clerks are directed to reduce the number of sites for in-person voting on June 23, 2020, with such reduction and such sites to be pre-approved by the State Board of Elections. All County Clerks shall make their offices and telephone lines available for the purpose of allowing registered voters of their respective counties to schedule appointments to vote on election day. County Clerks shall make reasonable efforts to accommodate in-person appointments according to the needs and availability of both the requesting voter as well as the Clerk's office. Appointments shall be consistent with public health and social-distancing standards and every reasonable effort shall be undertaken by County Clerks to see that in-person voting is implemented in a manner that limits direct contact between voters, other voters, and election officials, and shall be conducted from 6:00 a.m. to 6:00 p.m. local time as required by law.

Section 12. Notwithstanding the statutory deadline established by KRS 117.045(1), as tolled by Governor's Executive Order 2020-236, each County Board of

1   Elections shall have until May 15, 2020, to appoint precinct election officials for each
2   voting location.
3   Section 13.  Notwithstanding KRS 117.045(4)-(5), County Clerks are permitted to
4   utilize as poll workers voters who are registered as independent.
5   Section 14.  County Clerks are permitted to utilize poll workers in shifts of less
6   than twelve (12) hours.
7   Section 15.  No later than July 31, 2020, the State Board of Elections shall send
8   via United States Postal Service, to every registered voter on its inactive voter list,
9   written correspondence from the Secretary of State that prompts such inactive voter to
10  confirm in writing to the State Board of Elections whether the inactive voter has moved
11  out of Kentucky and is ineligible to vote in Kentucky.  The mailed correspondence shall
12  include for the inactive voter's benefit a return letter pre-addressed to the State Board of
13  Elections which includes an affirmation of intent, to be attested to by the voter's
14  signature, to be removed from the voter file. The State Board of Elections immediately
15  remove from the voter file the registration of any voter who consents in writing to such
16  removal.
17  Section 16.  All vote totals must be transmitted via "Certification, Official Count
18  and Record of Election Totals" SBE 49, 11/03 to the Secretary of State's Office no later
19  than 6:00 p.m., local time, June 30, 2020.
20  Section 17.  The process for any recanvassing of votes cast in a primary, special,
21  or local option election held on June 23, 2020 shall be conducted pursuant to the
22  method prescribed in KRS 117.305, except that the filing deadline shall be moved from

4:00 p.m. on the Tuesday following a primary election, to 4:00 p.m., local time, July 7, 2020.

Section 18.  Should changes in conditions related to the COVID-19 pandemic require additional policies or procedures, the State Board of Elections may promulgate further administrative regulations after a public meeting of the Board, with contingent approval of both the Governor and the Secretary of State.

Section 19.  If an absentee ballot is delivered by hand to a County Clerk's Office by 6:00 p.m., June 23, 2020 or by the United States Postal Service, bearing a postmark of June 23, 2020 or an earlier date, by 6:00 p.m., June 27, 2020., and is discovered to have been delivered to the wrong County Clerk's Office, it shall be sent by the receiving County Clerk to the correct County Clerk via overnight delivery by the United State Postal Service no later than June 27, 2020.  County Clerks shall use the Postal Corporate Express Mail Account, which shall be no cost, and shall inform the Postal Clerk that they were instructed to use the Postal Corporate Express Mail Account under the direction of the Kentuckiana Political Mail Coordinator.

Section 20.  If a voter has requested, but not received their absentee ballot by Election Day, the voter may appear at a county polling location to vote in person.  The election officer shall contact the County Clerk and County Board of Elections who shall determine the voter's eligibility and verify the ballot has not been returned and/or counted. The County Clerk or their designee shall cancel the voters absentee ballot in the Voter Registration System. Only after the voter's application has been canceled in the Voter Registration System shall the voter be required to sign the supplemental roster, an oath of voter, and be informed that voting more than once in an election is a

1  criminal offense.  Each voter who is deemed ineligible to vote may vote a provisional

2  ballot or request a hearing before the County Board of Elections.

3       Section 21. Incorporated by Reference. (1)  "Certification, Official Count and

4  Record of Election Totals", SBE 49, 11/03, is incorporated by reference.

5       (2)  This material may be inspected, copied, or obtained, subject to applicable

6  copyright law, at the State Board of Elections, 140 Walnut Street, Frankfort, Kentucky

7  Frankfort, Kentucky 40601, Monday through Friday, 8 a.m. to 4:40 p.m.

_____
Andy Beshear
Governor


_____
Jared Dearing
Executive Director, State Board of Elections


**PUBLIC HEARING AND PUBLIC COMMENT PERIOD**

A public hearing on this temporary emergency administrative regulation shall be held on September 30, 2020, at 10:00 a.m. EST, at the Office of the State Board of Elections.

10

Individuals interested in being heard at this hearing shall notify this agency in writing by five (5) workdays prior to the hearing, of their intent to attend. If no notification of intent to attend the hearing was received by that date, the hearing may be cancelled. This hearing will not be made unless a written request for a transcript is made. If you do not wish to be heard at the public hearing, you may submit written comments on the proposed administrative regulation. Written comments shall be accepted until September 30, 2020. Send written notification of intent to be heard at the public hearing or written comments on the proposed administrative regulation to the contact person.

CONTACT PERSON: Taylor Brown, 140 Walnut Street, Frankfort, Kentucky 40601, Phone: (502) 782-9499, Email: TaylorA.Brown@ky.gov.

## REGULATORY IMPACT ANALYSIS AND TIERING STATEMENT

31 KAR 4:190E Contact Person: Taylor Brown, phone: 502-782-9499, email: TaylorA.Brown@ky.gov

**(1) Provide a brief summary of:**

**(a) What this administrative regulation does:** This emergency administrative regulation outlines the procedures to be undertaken to effectively conduct the June 23, 2020 elections**.**

**(b) The necessity of this administrative regulation:** This emergency administrative regulation is necessary given that the Kentucky Constitution requires free and fair elections, yet the COVID-19 pandemic has created a state of emergency in the Commonwealth and poses a risk to the health and well-being of voters.

**(c) How this administrative regulation conforms to the content of the authorizing statutes:** KRS 39A.100(1)(l) orders the State Board of Elections to establish procedures for election officials to follow when the Governor has declared a state of emergency and the Secretary of State has recommended to the Governor, and the Governor has agreed, that a different time, place, or manner for holding elections is necessary.

**(d) How this administrative regulation currently assists or will assist in the effective administration of the statutes:** This emergency administrative regulation fulfills the mandates of KRS 39A.100(1)(l) and will provide the necessary framework for the Commonwealth's June 23, 2020 given the ongoing state of emergency.

**(2) If this is an amendment to an existing administrative regulation, provide a brief summary of:**

**(a) How the amendment will change this existing administrative regulation:**

**(b) The necessity of the amendment to this administrative regulation:**

**(c) How the amendment conforms to the content of the authorizing statutes:**

**(d) How the amendment will assist in the effective administration of the statutes:**

This is a new emergency administrative regulation.

**(3) List the type and number of individuals, businesses, organizations, or state and local governments affected by this administrative regulation:**

This emergency administrative regulation will affect all registered voters in the Commonwealth, along with county fiscal courts, and governmental entities related to the administration of electoral processes.

**(4) Provide an analysis of how the entities identified in question (3) will be impacted by either the implementation of this administrative regulation, if new, or by the change, if it is an amendment, including:**

**(a) List the actions that each of the regulated entities identified in question (3) will have to take to comply with this administrative regulation or amendment:** It is anticipated that any regulated entities impacted by this emergency administrative regulation will have to take no action fundamentally divergent from those actions already established for the administration of electoral processes.

**(b) In complying with this administrative regulation or amendment, how much will it cost each of the entities identified in question (3):** The State Board of Elections estimates that the implementation of this emergency administrative regulation will cost potentially between $1,000,000 to 1,500,000 at the state government level. County-level should not exceed those already anticipated by election needs under ordinary

circumstances. There are no costs to the individual voters to return a mail-in absentee ballot.

**(c) As a result of compliance, what benefits will accrue to the entities identified in question (3):** Compliance with this new emergency administrative regulation will benefit the entirety of the Commonwealth in that it will allow for the conduction of elections that minimize the health-risk of all involved during the ongoing state of emergency related to the COVID-19 pandemic.

**(5) Provide an estimate of how much it will cost the administrative body to implement this administrative regulation:**

**(a) Initially:** The cost of the implementation of this emergency administrative regulation for the State Board of Elections will be minimal as most costs will be borne at the county level or subsidized pursuant to the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act.

**(b) On a continuing basis:** This will be a temporary emergency administrative regulation.

**(6) What is the source of the funding to be used for the implementation and enforcement of this administrative regulation:** A combination of federal, state, and local funds will be used in the implementation and enforcement of this emergency administrative regulation.

**(7) Provide an assessment of whether an increase in fees or funding will be necessary to implement this administrative regulation, if new, or by the change if it is an amendment:** The State Board of Elections believes that the implementation of

this emergency administrative regulation can be achieved without an increase in fees or funding by the General Assembly.

**(8) State whether or not this administrative regulation established any fees or directly or indirectly increased any fees:** No fees are associated with this emergency administrative regulation.

**(9) TIERING: Is tiering applied? Explain why or why not.** Tiering is not used in this emergency administrative regulation as a desired result of the promulgation of this emergency administrative regulation is a uniform procedure for the administration of the June 23, 2020 elections throughout all of the counties in the Commonwealth.

## FISCAL NOTE ON STATE OR LOCAL GOVERNMENT

31 KAR 4:190E Contact Person: Taylor Brown, phone: 502-782-9499, email: TaylorA.Brown@ky.gov

**(1) What units, parts or divisions of state or local government (including cities, counties, fire departments, or school districts) will be impacted by this administrative regulation?** At the state level, the State Board of Elections and the Secretary of State's Office will be impacted by this emergency administrative regulation. At the local level, office of all County Clerks and all local Boards of Elections will be impacted by this emergency administrative regulation.

**(2) Identify each state or federal statute or federal regulation that requires or authorizes the action taken by the administrative regulation.** Statutes and regulations either requiring or authorizing this emergency administrative regulation include: KRS 13A.190, KRS 13A.190, and 52 U.S.C. 20101 *et seq.*

**(3) Estimate the effect of this administrative regulation on the expenditures and revenues of a state or local government agency (including cities, counties, fire departments, or school districts) for the first full year the administrative regulation is to be in effect.**

**(a) How much revenue will this administrative regulation generate for the state or local government (including cities, counties, fire departments, or school districts) for the first year?** It is not expected or intended that this emergency administrative regulation will generate any revenue.

**(b) How much revenue will this administrative regulation generate for the state or local government (including cities, counties, fire departments, or school districts) for subsequent years?** It is not expected or intended that this emergency administrative regulation will generate any revenue.

**(c) How much will it cost to administer this program for the first year?** The State Board of Elections estimates that the implementation of this emergency administrative regulation will cost potentially between $1,000,000 to 1,500,000 at the state-government level. County-level expenses should not exceed those already anticipated by election needs under ordinary circumstances. There are no costs to the individual voters to return a mail-in absentee ballot.

**(d) How much will it cost to administer this program for subsequent years?** This emergency administrative regulation is temporary and will not be in force following the administration of the June 23, 2020 elections.

## SUMMARY OF MATERIAL INCORPORATED BY REFERENCE

"Certification, Official Count and Record of Election Totals" SBE 49, 11/03, is the 1-page permit application form that counties use return vote totals to the Secretary of State.